Howard SMITH

v.

HOBART MANUFACTURING COMPANY

v.

HOLIDAY FROSTED FOOD COMPANY.

Civ. A. No. 23264.

United States District Court
E. D. Pennsylvania.
Aug. 22, 1960.

Klovsky & Kuby, Philadelphia, Pa., for plaintiff.

John B. Hannum, III, Philadelphia, Pa., for Hobart Mfg. Co.

John J. McDevitt, III, Philadelphia, Pa., for Holiday Frosted Food Co.

WOOD, District Judge.

Jurisdiction in this case is based on diversity, and the amount in controversy is in excess of $3,000. Plaintiff Howard Smith sustained injuries to his hand and lower arm requiring amputation. He was an employee of Holiday Frosted Food Company, third-party defendant. At the time he received his injuries he was operating a meat-grinding machine designed and manufactured by the Hobart Manufacturing Company, original defendant. The machine when sold to his

employer had connected to it, by bolts, a guard which had been removed. While feeding the machine with meat his foot slipped and his hand became entangled in the worm, drawing it and his arm down into the machine. At that time his body was in such a position that he could not press the electric switch which would stop the operation of the machine. Plaintiff alleged that his injuries were sustained because the machine was designed in an unsafe manner and also that it was not manufactured in accordance with the requirements of the rules and regulations of the Department of Labor and Industry of the Commonwealth of Pennsylvania. The issues of liability and damages were tried separately. On interrogatories the jury determined that both defendants were liable to the plaintiff. The issue of damages was tried and a jury verdict of $60,000 was awarded to the plaintiff. None of the parties questions the propriety of that award as to amount. Defendants have moved for judgment non obstante veredicto or in the alternative a new trial. The brief and arguments were submitted by Hobart but we have been asked to consider them in the same light as though filed by Holiday and our rulings will apply to both defendants.

The defendant has advanced two basic arguments in his motion for Judgment N.O.V.: first, that the meat-grinding machine manufactured by defendant was *not being used in the manner for which it was manufactured* when it injured the plaintiff, and second, that whether or not the defendant was negligent in designing the machine, that design was not the *proximate cause* of plaintiff's injuries. The arguments are interrelated and are both based upon the admitted fact that a guard, which protected the mouth of the grinder, had been removed by one of plaintiff's fellow employees, and that had

the guard *not* been removed, the accident could not have occurred.

The defendant contends that operation without the guard was a use for which the machine was never intended, and the manufacturer is relieved by law from liability from accidents resulting from such use. However, to relieve a manufacturer of liability from negligent use, it must be so remote from that intended as to be unforeseen by him.[1] Here the jury had evidence from which to conclude that the manufacturer could reasonably have foreseen the use of the meat grinder without the guard.[2] Operation of the machine to grind meat without the guard in place was not such a use as would relieve the manufacturer of liability for its failure to adopt a safe design.

Defendant also argues that the negligent removal of the guard by plaintiff's coworkers amounted to a superseding cause, which broke the causal connection between any negligence of the manufacturer and the injury to the plaintiff. This, too, is a factual question of foreseeability for the jury.[3] Since the jury was adequately instructed on legal causation and returned a verdict against the defendant-manufacturer, we may assume that it concluded that the removal of the guard did not break the chain of causation.

Defendant contends that since the facts were not in dispute, causation was a question of law. In support of this proposition, defendant cites the case of DeLuca v. Manchester Laundry & Dry Cleaning Co., Inc., 1955, 380 Pa. 484, 112 A.2d 372. In that case the court stated:

"Ordinarily the question whether the negligence of a defendant is a proximate cause of the accident is for the fact-finding tribunal, (citing case) but where the relevant

1. See Harper and James The Law Of Torts, Vol. 2, § 28.6; Prosser On Torts, 2d ed., p. 503.

2. The guard was fastened to the grinding machine by bolts held in place by drive pins. These bolts and pins were removable. (NT142 et seq.)

3. See Restatement Of Torts, § 447, particularly subsection (b) and comments. See also §§ 442, 443, 441, 440.

facts are not in dispute *and the remoteness of the causal connection between defendant's negligence and plaintiff's injury clearly appears from the evidence* the question becomes one of law * * *." At pages 491, 492 of 380 Pa., at page 376 of 112 A.2d. [Emphasis supplied].

The above case is distinguishable. Of course, a finding by a jury unsupported by any evidence cannot be sustained, but as applied to the question of legal causation in a situation in which the facts are not in dispute, *if reasonable minds could differ on whether the agreed facts showed legal causation,* then that question is one for the jury.[4]

The motion for Judgment N.O.V. will be Denied.

In the motion for a new trial defendant Hobart charges that the Court erred in permitting the witness Davidlee Von Ludwig to testify as an expert over counsel's strenuous objection. Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A., gives the trial judge the power to grant a new trial to prevent what he considers to be a miscarriage of justice. Fed.Rules of Civ.Proc.; 28 U.S.C.A.; 6 Moore's Federal Practice, § 59.05, subsection 5, page 3759, 2d ed. 1953; Nuttall v. Reading Company, 3 Cir., 1956, 235 F.2d 546; 3 Barron & Holtzoff, Fed.Prac. & Proc., § 1302 (Rules ed. 1950).

For the reasons hereinafter stated, we believe that we erred in ruling that this alleged expert was qualified to testify in this case and that the ends of justice require a new trial.

A certain prestige and dignity arises when a witness classified as "expert" appears before the jury. It would be unrealistic to say otherwise, notwithstanding the worthy admonition of Professor Wigmore that there is a breakdown in our judicial system as to expert witnesses which has led to distrust of them and an increasing clamor for control of expert testimony by the Court. (Wigmore On Evidence, § 563, p. 646.) If we are to separate the expert witness from the lay witness who comes within the limitations of opinion evidence, then most certainly his qualifications should be cautiously scrutinized. An "expert witness" has been defined as a man of science educated in the art, or persons possessing special or peculiar knowledge acquired from practical experience and it has been said that if the trial court is satisfied that the expert witness has gained such experience in the matter as to entitle his evidence to credit it should be admitted. He need not be infallible or show the highest degree of skill and, particularly, he need not be registered or the holder of degrees or certificates in order to become qualified. Bowser v. Publicker Industries, Inc. et al., D.C., 101 F. Supp. 386, citing Lance et al. v. Luzerne County Manufacturers Association, 366 Pa. 398, 77 A.2d 386. The question here, however, is: Has this witness, from the statement of his own qualifications, satisfied the Court that he should be placed in the classification of an expert or is he a lay witness rendering his own opinion under the guise and prestige of an expert? To satisfy ourselves we have examined and reexamined his testimony. He professes to be "a consulting materials engineer and a consulting safety engineer." Webster defines "engineer" as "one versed in or who follows as a calling or profession any branch of engineering" and "engineering" in its modern and ac-

---

4. The other case cited by defendant in support of the contention that legal causation is a question of law is Farley v. Sley System Garages, Inc., 13 Pa.Dist. & Co.R.2d 680, affirmed 1958, 187 Pa. Super. 243, 144 A.2d 600. The defendant operated a public parking lot from which an automobile was stolen. The jury found the defendant negligent in permitting the theft. As the police were pursuing the thief in a violent automobile chase, the thief crashed into another vehicle in which plaintiffs were riding. The court concluded that there was no evidence to sustain the jury's finding that the defendant's negligence was the proximate cause of the plaintiffs' injuries, and granted defendant's motion for Judgment N.O.V.

cepted sense as "the art and science by which mechanical properties of matter are made useful to man in structures and machines." The term "engineer" as qualified by the term "consulting" connotes one who is called in to advise. Therefore, we would conclude that to be qualified to testify as an expert in this particular case that this man should have the attributes of knowledge and skill in engineering by reason of education or experience which make him competent to advise in the particular field of safely designing electrically powered worm-driven grinders of meat or similar substance.

To have reached this stage of competence we have to look to the activities of the individual during his adult life, which in this case is approximately 20 years. He testified that he graduated from Long Island University in 1939 and received a Bachelor of Science degree, although admittedly he majored in history, and that thereafter for a very short time he took a course in mathematics for part of a year at Columbia University. Insofar as scholastic education is concerned, that is the extent of it. During the ensuing years there is no evidence that he has pursued scientific studies of any nature and, therefore, his peculiar knowledge and skill, if any, would have had to come from his own experience. In that regard, some factors are worthy of discussion. He testified, for example, that he "filed for application approximately 350 patent disclosures" but none of these are described or identified. The Court has absolutely no idea whether they have any connection whatsoever with safety design or what their intrinsic worth was, if any. He further stated that he had written "approximately 150 technical articles on various subjects, all of which have been published." What they concerned, their merit or technical or scientific value is unknown except that a small portion of them were incorporated in a book entitled "Investment Casting for Engineers" which he coauthored with someone else. On cross-examination on

this point he readily admitted that he did not write on meat grinders or safety in food machines and that one chapter of the book dealt with casting design and machine part design in general and in that regard referred to drawings in the book but could not point out any passage which would show knowledge or skill in the field of safety design in machines of the type involved in this case.

Further, and reluctantly, we note that in his direct testimony that he, at least in the early days of his activities following college, seemed to change his employment almost yearly and that thereafter his testimony revealed working and associating with firms of such a vast number it is difficult for the Court without more direct evidence to determine what, if any, was his association with these firms or what type of organizations they were. For example, he stated, "I do work for our Government, various branches of the Government; I do work for French firms, German firms, industrial machine equipment firms here and abroad" and also, "Well, a lot of my safety consultant work is in utilities: Jersey Central Power and Light Company uses me; Public Service of New Jersey uses me; the New Jersey Natural Gas Company uses me; Florida Power & Light Company uses me; various manufacturing equipment members of the American Gas Association use me in manufacturing various industrial and domestic appliances, gas consuming equipment. Also industrial machine tool equipment." This testimony as to his present activities was followed by what apparently were his past activities. We do not think the Court can be blind to practicalities. Here is a man who apparently is associated with no one and operates on an individual basis. First, we find it difficult to credit that any man could be engaged in such extensive operations unless his association with the firms involved was of a very minute character. Assuming that he did all of these things, the Court still is unaware of what his capacity was or is in relation to that. The term "uses me" is of little help in

determining the qualifications of an alleged expert.

While we do not think it is necessary that an expert hold a degree or be certified, we cannot help but wonder that a person who claims such broad activities in the field of engineering would not have been a member of at least one organization or society dedicated to the improvement of that profession.

■ Concluding this point, there is no question but what the qualifications of the expert are left to the discretion of the judge; the weight and credibility of the testimony submitted after qualification is for the jury. Also the possession of the required qualifications must be *expressly* shown by the party offering the expert. This entire subject is carefully covered and discussed in Wigmore On Evidence, Vol., 2, beginning at §§ 555 through 563. There are a multitude of Law Review articles and discussions on this matter but we have been unable to find a case where the issue has been expressly decided which is before us at this time. There is little difficulty in determining the qualifications of a doctor, psychiatrist, accountant, chemist, physicist, ballistic expert or other particularly defined regions of scientific knowledge, largely because the expert comes into Court clothed with certain recorded and attained achievements which stamp him as having particular knowledge in his field. The difficulties of the problem arise where one acts as an expert but speaks as a layman.

■ Since we are unaware of any standard of proof of qualifications we believe that something more than the self-serving statement of the expert should be required to qualify him in the absence of proven recorded achievements in his chosen field, such as corroboration by another witness or submission of oral or documentary corroborating proof of his qualifications. We will, therefore, Order a new trial, since on reflection we de not believe on the record the witness qualified as an expert.

One other feature of this case bears some comment. Counsel for defendant Hobart after the verdict asked leave to take the deposition of the expert for the purpose of convincing the Court that a new trial should be granted on the basis of after discovered. evidence. While the procedure was somewhat unusual, the Court permitted the deposition to be taken in its presence, reserving, of course the determination as to whether any proof adduced in the deposition would constitute after discovered evidence. We will not go into detail as to what developed there, as it is part of the record, but in summary defendant Hobart confronted the expert with his testimony presented in a case in the Court of Common Pleas in Allegheny County, Pennsylvania in 1958. The gist of that testimony was that while employed by Norden Bombsight Company the Federal Bureau of Investigation in the person of a Mr. Brown had requested that he not resign from that company but that he stay on as an employee and assist the Bureau in an investigation which they were making. It appeared that on March 15, 1960, counsel for Hobart had written to J. Edgar Hoover regarding the testimony given in the Pittsburgh case. Over the signature of Mr. Hoover counsel received a letter which completely refuted the statement of the expert. Without further detail the Court states unequivocally that in view of the proof submitted at the deposition the Court is convinced that it can place no credibility on the testimony of this witness in that particular case. On the other hand, counsel for plaintiff stated in its brief that defendant Hobart knew the witness would be called as an expert in our case for one year prior to the trial before us. Furthermore, the witness did not make any. reference in his testimony. in the case before us to any work for the Federal Bureau of Investigation, although he did testify as to working for Norden Bombsight Company. In addition, had this testimony been adduced at the trial before us whether or not it would have gone to the

weight of his testimony is conjecture and in any event only his qualifications were for the Court; the credibility for the jury. For these reasons we do not believe that Rule 59 of the Federal Rules of Civil Procedure as limited and qualified by Rule 60(b) (2) authorizes the granting of a new trial on the basis of after discovered evidence on the record before us.

### Order

And now, to wit, this 22 day of August, 1960, It Is Hereby Ordered that the motion for judgment non obstante veredicto is Denied and the motion for a new trial as to both defendants is Granted, limited to the issue of liability.