Mrs. Frances Buckley WARD, Plaintiff,

v.

The **HOBART MANUFACTURING COMPANY**, Defendant.

Civ. A. No. 3912.

United States District Court,
S. D. Mississippi, S. D.

Sept. 9, 1970.

844

Len Blackwell, George Estes, Jr., Gulfport, Miss., for plaintiff.

P. D. Greaves, Jerry Terry, Gulfport, Miss., for defendant.

## MEMORANDUM OPINION

NIXON, District Judge.

The plaintiff, Mrs. Frances Buckley Ward, an adult resident citizen of Harrison County, Mississippi, filed this diversity suit against the defendant corporation, The Hobart Manufacturing Company of Ohio, qualified to do business in the State of Mississippi, for compensation or damages resulting from a severe and crippling injury to her right hand which occurred on June 29, 1970, while cleaning a 1½ horsepower meat grinder manufactured by the defendant in 1948 and purchased as a used machine by plaintiff's husband from one E. C. Summerlin from Gulfport, Mississippi on August 17, 1965.

Plaintiff contends, and defendant denies, that it is liable to plaintiff because of negligence of design of the meat grinder and negligent failure to adequately and properly warn of the foreseeable dangers in the use thereof and particularly the use without the prescribed guard provided for and shipped with the grinder by the defendant manufacturer. Although plaintiff also contended in her complaint that the defendant was liable to her on the alternative theory of strict liability in tort, she has not in the trial of this cause sought "to press this theory," as evidenced by a statement to this effect on page 14 of her post trial brief filed with this Court.

Plaintiff and her husband owned and operated Ward's Barbecue, a restaurant business on Highway 49 in Harrison County, Mississippi wherein they made their own sausage and sold their own farm products as well as various other foods. On August 17, 1965 they purchased a second-hand or used Model No. 4332 Meat Grinder manufactured by the defendant, Hobart, from one E. C. Summerlin of Gulfport, Mississippi in order to utilize it in making sausage in their business establishment which they did from the date of purchase until June 29, 1967, when plaintiff was injured. This grinder had been manufactured by the defendant in 1948 and was sold and shipped as a new machine to Hinote Packing House in Robertsdale, Alabama on December 13, 1948 (Ex. D–3), and apparently after much use, eventually was purchased by plaintiff's husband.

At the time that the meat grinder in question and all similar models were shipped by the defendant manufacturer to their original purchasers there was also sent as standard separate equipment, a feed pan and guard as well as a stomper or feed stick, together with a catalog of replacement parts which included the feed pan and attached guard, as well as instructions which included a warning that hands should be kept out of the feed funnel or "bell" through which the meat is fed into the machine; however, there were no instructions sent that warned a user against using the grinder without the pan and guard attached thereto.

At the time that the plaintiff's husband purchased the used meat grinder from Summerlin in 1965, the pan and attached guard were not affixed to the grinder, were not mentioned in any way, and neither plaintiff nor her husband knew that there was an available existing pan or guard. It could not be ascertained that a pan and guard were standard equipment for this type meat grinder because there was no apparent place on the grinder where the pan and guard

should be attached, and there was a complete absence of any mention of a pan and guard or warning against the use of the grinder without the pan and guard printed or appearing anywhere on the meat grinder or any of the component parts thereof either at the time it was manufactured or subsequent thereto. Also, neither plaintiff nor her husband were aware of the existence of nor were furnished with the above referred to written instructions which accompanied the meat grinder when it was originally sold by the defendant manufacturer to the original purchaser.

The meat grinder which caused plaintiff's injuries was at all times in good mechanical condition. The top of the bell or feed-funnel is approximately 7 inches above the top of the "worm" or "screw" and the top of the worm or screw is approximately 9 inches below the pan-guard if and when it is attached. From the inside bottom of the feed pan to the underside of the guard is 1¾ inches and the purpose of the guard is to prevent the inadvertent entry of the hand and yet allow meat to pass through. The diameter of each of the five holes contained in the pan-guard is 2½ inches. The guard is mounted on the feed pan approximately 1¾ inches above the bottom of the pan over the open bell and the pan itself is rectangular in shape and made of sheet steel with 4 inch sides.

It was further established by the evidence that there were five changes in the makeup of the meat grinder between the time of its manufacture and the time that plaintiff was injured by it, namely: (1) the detachable pan and guard were absent; (2) a new type cap or bell had been installed; (3) there had been a change in the stop stud on the cylinder; and (4) the machine was on a different type base. Although the on-off switch installed on the meat grinder at the time of trial was a domestic type made for 110 volts (Ex. D–8), as contrasted with the industrial type dye-stamped switch rated for one or two horsepower and installed by the manufacturer (Ex. D–7), the latter requiring much more force to operate since it had a positive snap action as compared with the former, and although plaintiff and her husband did not at first recall any changes in the switch subsequent to the plaintiff's injuries, nevertheless they did apparently later recall that the industrial type switch had been replaced by Exhibit P–8, the domestic or home type, in December, 1968 by one Don Miller who is in the refrigeration service in Gulfport and who regularly did electrical work for plaintiff and her husband. This fact was confirmed by the witness, Miller, who testified that the industrial type switch similar to Exhibit D–7 which he removed from the meat grinder worked with the same ease as the home lighting type switch with which he replaced it and which was on the meat grinder at the time of this trial.

On the morning of June 29, 1967 plaintiff was wiping or finishing the cleaning of the Hobart meat grinder which had previously been taken apart and cleaned by her husband who had plugged the machine into the receptacle. However, it had not been used to grind meat, or to the recollection of plaintiff or her husband, been turned on or used on the day of injury but had been used on the previous day to grind the average daily amount of 100 pounds of sausage. Plaintiff does not ever recall intentionally or unintentionally turning the machine on or off while wiping it with a rag, but suddenly her right hand, which she had inserted into the feed funnel was caught, twisted and mangled by the worm although it apparently did not reach the blade or cutting area. Plaintiff stated that the machine is audible when running, even after the switch is cut off, but that she did not hear it at any time on this morning in question perhaps because so much noise was being made in the restaurant in preparing for the day's activity. She testified that to the best of her recollection the machine was not on and the worm was not turning at the time that she inserted her hand into the machine to wipe it and

does not know whether she accidentally threw the switch thus turning the meat grinder on. She was alone at the time, and in response to her screams for help, her husband ran into the back room, disassembled the machine, and removed her hand which had been severely injured. At this time the switch apparently was off because the machine was not running and plaintiff was not in a position to, and did not, flip the switch off after her hand was caught therein.

In denying its liability to plaintiff, the defendant contends that the meat grinder was manufactured under all standard procedures, patterns and materials which are used by all other reputable manufacturers of such machines, and that, as a matter of fact, the defendant was the only manufacturer which provided any kind of guard for its meat grinder in 1948, when it was manufactured; that if the meat grinder had been used by the plaintiff as completely manufactured and equipped with all attachments on it which were provided by the manufacturer at the time of its original sale and if it had been reasonably and properly cared for and maintained, plaintiff would not have been injured in the manner alleged; that there was no defect whatsoever in its design; that adequate warning was given to the original purchaser, and all purchasers of a second-hand machine and those using it were charged with the obvious knowledge of the danger created by use of a machine which ground pieces of meat into mulch, the plaintiff particularly being aware of the potential danger of this grinder inasmuch as she admitted that at a time prior to her injuries the machine had ground up a hammer handle which plaintiff was using instead of the provided "stomper" or feed stick; that it was not negligently designed; that adequate warning was given of the obvious and open dangerous nature of the machine and the risk attendant with its use; and that the negligence of the plaintiff was the sole proximate cause of her injuries.

■ Since this is a diversity case, under the Erie Doctrine,[1] it is necessary that this Court apply existing Mississippi law to the facts of this case and if there be none, then to engage in "rational divination" to determine what the Mississippi Supreme Court would decide the law to be if and when called on to do so.

■ The Mississippi Supreme Court in its landmark decision in State Stove Manufacturing et al. v. Hodges, 189 So.2d 113 (1966), changed previous Mississippi law by dispensing with the requirement of privity of contract as a prerequisite to the maintenance of a suit by a user or consumer against a manufacturer in a case of this type. *State Stove* dealt with a suit by a purchaser against the manufacturer of a hot water heater which exploded, and was based on the theory of strict liability in tort because of a defective condition in the heater. The Court unanimously approved and cited Sec. 402A, American Law Institute, Restatement of Torts which reads as follows:

"SPECIAL LIABILITY OF SELLER OF PRODUCT FOR PHYSICAL HARM TO USER OR CONSUMER

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(A) The seller is engaged in the business of selling such product;

(b) It is expected to and does reach the user or ultimate consumer without substantial change in the condition in which it was sold."

Although the requirement of proving negligence on the part of the manufacturer or its knowledge of the defective condition is dispensed with under the

1. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

strict liability theory, nevertheless, the party suing has the burden of proving the defective condition and the fact that it proximately caused the injury or damage complained of. Also, the plaintiff has the burden of proving that there was no substantial change in the condition of the manufactured product between the time it was manufactured and shipped and the time of the injury or damage.

■ As stated previously, although one count of the plaintiff's complaint is based on the theory of strict liability in tort, plaintiff wisely did not pursue this route on its voyage in quest of recovery. It is without dispute that a pan and guard were manufactured and shipped with each Model 4332 Chopper, including the one in question, and that they were not being utilized by the plaintiff at the time of her injury. See Ford Motor v. Simpson, 233 So.2d 797 (Miss.1970); Walton v. Chrysler, 229 So.2d 568 (Miss.1970); Ford Motor v. Dees, 223 So.2d 638 (Miss.1969).

■ The two theories on which plaintiff seeks to recover from the defendant are (1) negligence of design, and (2) failure to adequately warn, which are, under the circumstances of this case, interrelated. Although somewhat akin, an action based on the theory of strict liability differs from that based on the theory of negligence in design inasmuch as in the former, a person seeking to recover need not prove either that the defendant negligently created the unsafe condition of the product or that he was aware of it, whereas in the latter, the party seeking to recover must prove negligence and foreseeability of the likelihood of substantial harm therefrom.

■ The Mississippi Supreme Court in Walton v. Chrysler Motor Corporation, *supra,* recognized, and at least impliedly approved an action based on the theory of negligence of design, laying down the essential requirements of proof for recovery based thereon as follows: (1) that (the plaintiff) was injured as a result of the defendant's conduct (causal relationship); (2) that he was protected under some rule of law against this conduct (duty); (3) that defendant's conduct violated this duty; and (4) that plaintiff suffered a loss (damages), 229 So.2d at 573. Acceptance by the Mississippi Supreme Court of the principle that a manufacturer may be liable for negligence to remote users of his products is consistent with the extensive development of the doctrine of MacPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050 (1916). Although the greatest development has been in the field of strict liability actions arising out of accidents allegedly caused by negligently and defectively manufactured products, more recently, there has emerged a large number of cases in which the plaintiff bases his action on the allegation that the defendant manufacturer negligently designed its product which proximately caused plaintiff's injuries or damages. In some of these latter cases, the main issue has been whether the manufactured product is accompanied by the proper directions for use or by adequate warning.[2] It has been pointed out that in many instances an injured party may recover from the manufacturer based on the theory of negligence of design of the entire product, whereas he could not recover on the theory of strict liability based upon a defective component part thereof, for the reason that in the former case he has overcome what is a major hurdle in products strict liability cases, namely, the necessity to prove that the manufactured article or the component part thereof was defective and unreasonably dangerous when it left the manufacturer's control and that it did not become so after delivery. If the plaintiff can establish negligence of design, directions or warnings, he not only has established fault despite the fact that the product

2. See Noel Manufacturers' Negligence of Design or Direction for Use of a Product, Vol. 71, The Yale Law Journal, pp. 816, et seq., for an excellent and exhaustive discussion of this subject.

may be operating satisfactorily and smoothly after the accident, but also that the defect existed when the product left the manufacturer's plant, regardless of undue wear or mishandling thereafter.[3]

 In order to recover on the theory of negligent design, it is necessary that a plaintiff prove by a preponderance of the evidence that either the design of the product is necessarily unsafe or that it created an unreasonable danger to the public because the directions for use thereof were inadequate or there was an absence of, or insufficient warning thereon.[4]

 It is not essential, with reference to design, that the product be incapable of doing harm, that is, the manufacturer has no duty to make a product which is "accident-proof" or "foolproof."[5] Otherwise stated, a manufacturer is not an insurer against the possibility of accidental injury arising out of the use of its product. See Walton v. Chrysler Motor Corporation, *supra*. In order for a plaintiff to recover on the theory of negligence of design, it is incumbent upon her to prove by a preponderance of the evidence the manufacturer's foreseeability of unreasonable danger or risk of substantial injury which is likely to occur to any ultimate user, consumer or bystander whom he should reasonably expect would use or be in the vicinity of the product while it is being used in a manner and for a purpose which could reasonably be foreseen. As a corollary to this rule, while there is ordinarily no duty to anticipate careless use, there is a duty on the part of the manufacturer to foresee certain intervening or superseding acts of others, in which event the manufacturer is not insulated or relieved from liability.[6] While warnings to the purchaser of a product may prevent his own recovery,[7] the manufacturer still may be liable for negligence of design to others whom he should reasonably expect to use the product or to be in the vicinity of its probable intended or normal use. As to the latter, a product still may be unreasonably dangerous.[8]

In many cases liability for negligence in design has been predicated on the fact that the design in question involved an unreasonable danger in the absence of a warning attached thereto. In De Vito v. United Air Lines[9] a judgment for the plaintiff was in part based on a concealed defect of design and the failure of the manufacturer to warn that carbon dioxide tended to enter the cockpit of the Douglas DC-6 plane in question in such quantities as to affect the pilot adversely, and thus, that there was a need for the crew to wear oxygen masks upon release of the gas into any fuselage compartment. In the case sub judice, plaintiff alleges as an alternate theory of recovery that the defendant manufacturer herein owed to its ultimate users of its meat grinders the duty to warn of any dangers which are reasonably foreseeable, and that its failure to incorporate warnings, and particularly a warning on the machine that it is not to be used without an attachable pan and guard, constituted negligence in design because of the creation of a dangerous and unsafe condition. Furthermore, plaintiff contends that there is, independent of the duty to exercise due care in designing and manufacturing equipment which is likely to produce foreseeable danger of substantial harm, independent or higher duty to warn the public of this danger. In support of this

---

3. Noel, Recent Trends in Manufacturers' Negligence as to Design, Instructions or Warnings, 19 Southwest Law Journal, p. 43 (1965).

4. Roberts v. United States, 316 F.2d 489 (C.A.3, 1963).

5. Blissenbach v. Yanko, 90 Ohio App. 557, 562, 107 N.E.2d 409, 411 (1951).

6. Smith v. Hobart Mfg. Co., 185 F.Supp. 751, 753 (E.D.Pa.1960); 194 F.Supp. 530 (E.D.Pa.1961).

7. 2 Restatement of Torts, Sec. 398, comment b (1934).

8. Id. at Sec. 389.

9. 98 F.Supp. 88 (E.D.N.Y.1951).

contention, she cites the case of Yarrow v. Sterling Drug Company,[10] in which the plaintiff was given a drug, Aralen, as a treatment for an arthritic condition. This drug was known by the manufacturer to have certain "ocular complications" and the plaintiff's doctor received a letter to that effect. As a result of daily administration of the drug the plaintiff thereafter became 80% blind. The Court found that the product was not defective, but liability was imposed because of the defendant's failure to adequately and sufficiently warn the plaintiff's doctor of the above danger through its salesmen. See also Barth v. B. F. Goodrich Tire Company, 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (1968); Davis v. Wyeth Laboratories, Inc., 399 F.2d 121 (C.A.9, 1968).

We shall now apply the law as we believe it to be to the facts as we find them to be from all the evidence of record in order to determine the issues now before this Court.

According to Dr. Charles T. Carley, Jr., Professor and head of the Mechanical Engineering Department of Mississippi State University, whom the Court recognized to be an expert in the mechanical field,[11] the measurements of the elliptical shaped feed funnel or bell of the grinder in question at the time that he examined it on behalf of the plaintiff were 9½ inches across one diameter at the top and 8¼ inches across the other, and at the bottom it was 4½ inches on the major axis and 3¼ inches on the minor axis. This expert further found that the run-down time of this machine, i. e., the time that the worm would continue to operate and the blades continue to spin after the switch was turned to an off position or the machine was unplugged, (because of the 10 to 1 reduction the worm turns slower than the motor making it more difficult to stop the worm than the motor), ranged or varied from two to twenty-two seconds, depending on how tight the blade was adjusted

against the cutter plate. It was also his testimony that a person could clearly hear the machine operating during this run-down time even at a distance of 15 to 20 feet away. Plaintiff admitted that this machine was audible during the run-down period under normal circumstances but that there was a considerable amount of noise in the barbecue establishment caused by preparations for the day's opening, and that this made it impossible for her to hear the machine humming during the run-down time. Dr. Carley was of the opinion that the design of the subject meat grinder was defective, making it dangerous and unsafe because: (1) the opening of the feed funnel was large enough to permit a human hand to enter the area of the worm or feed screw; (2) there was no guard-pan permanently attached to the machine nor any obvious or apparent place for such a pan or guard to be attached; (3) there was no device which would automatically prevent the machine from operating if the guard-pan was not affixed thereto; and/or (4) there were no safety warnings whatsoever on the machine to caution any user thereof concerning operation or cleaning, and particularly to warn of potential danger created by the absence of the guard-pan. It is undisputed that neither the plaintiff nor her husband knew of the existence of a guard-pan manufactured for and shipped with the Model 4332 meat grinder. The defendant's manager of its direct sales division, Belford Myron Ellingson, who admitted that the Hobart machines were more difficult to sell with guards on them than off, stated that on several occasions he witnessed the Model 4332 meat grinder being used by others without the attachable guard-pan affixed and that on each such occasion he emphatically warned the user that he was doing something foolish and dangerous because the grinder is dangerous if used without the guard and pan inasmuch as the bell is large enough to admit a human hand. It was Mr. El-

10. D.C., 263 F.Supp. 159, affd. 408 F.2d 978 (8 Cir. 1969).

11. Dr. Carley's qualifications appear in Exhibit P–9.

lingson's testimony that on a later model meat grinder manufactured by the defendant subsequent to the time that the 4332 was no longer manufactured, the feed pan is permanently attached to the housing of the machine and that an even later model could not be operated without the pan.

Bruce M. Geiger, an officer of and director of engineering for the defendant, Hobart, testified that the defendant was the only manufacturer of meat grinders which provided any guard system whatsoever in 1948, and that no warning whatsoever appeared on the 4332 model or any component part thereof which notified the user that it was dangerous to operate the grinder without the pan-guard, and in fact, there was no mention whatsoever of the detachable guard-pan which could be affixed or removed through the use of a simple screwdriver and which was attachable through the use of three machine screws and a female thread. Mr. Geiger further admitted that Hobart had considered recalling the Model 4332 for the installation of more safety features such as a permanent guard-pan or warning original purchasers thereof that it should not be used without the detachable guard-pan, but that this plan was abandoned when it appeared that it would probably be impractical or too difficult to do so. It was his further testimony that the motor and gear case unit on Model 4332 have an estimated life of approximately 15 years but could be utilized as long as 30 years, depending upon the use and care thereof.

█ This Court is of the opinion and finds that the Model 4332 meat grinder in question was a dangerous and unsafe instrumentality when used without the detachable guard-pan which plaintiff and her husband neither knew about nor possessed. The existence of this safety device was not chargeable to the average reasonable user thereof because of the absence of any apparent place for the attachment thereof to any component part of the machine.

█ This Court is of the further opinion and finds that the defendant through its officers and employees knew or through the exercise of reasonable care should have known and foreseen the likelihood of substantial harm which would probably occur to a remote user of this meat grinder because of the dangerous condition created thereby without the utilization of the guard-pan; that the defendant could and should have reasonably foreseen the likelihood of the detachable guard-pan being lost or misplaced somewhere down the line of this machine's resale to and use by others who would have no knowledge or indication of the existence of the guard-pan and who were given no warning whatsoever of the necessity of its use to prevent substantial harm and injury to them. In Smith v. Hobart Mfg. Co., 185 F.Supp. 751, 753 (E.D.Pa., 1960), the United States District Court for the Eastern District of Pennsylvania overruled a Motion for Judgment Notwithstanding the Verdict or in the Alternative for a New Trial filed by the defendant therein and herein, Hobart Manufacturing Co. and by plaintiff's employer against both of whom the plaintiff therein received a jury verdict on facts very similar to those of the case sub judice. In the *Smith* case, plaintiff was operating a meat grinder designed and manufactured by Hobart, the original defendant, while he was in the employ of Holiday Frosted Food Company, the third party defendant. While feeding meat into the machine, plaintiff's foot slipped and his hand became entangled in the worm drawing it and his arm down into the machine. He alleged that his injuries were sustained because the machine was designed in an unsafe manner and also that it was not manufactured in accordance with the requirements of the rules and regulations of the Department of Labor and Industry of the Commonwealth of Pennsylvania. The defendant advanced two basic arguments in support of its motions: first, that the meat grinding machine manufactured by it was not being used in the

manner for which it was manufactured when it injured the plaintiff, and second, that even if it was negligent in designing the machine, that design was not the proximate cause of plaintiff's injuries. These two arguments were based upon the admitted fact that although the machine, when sold to plaintiff's employer, had connected to it, by bolts, a removable guard which protected the mouth of the grinder, this guard had been removed by one of plaintiff's fellow employees; that had the guard not been removed the accident would not have occurred. The Court, in rejecting defendant's first contention, held that in order to relieve a manufacturer of liability from negligent use, the use must be so remote from that intended as to be unforeseen by him (citing Harper and James, The Law of Torts, Vol. 2, Sec. 28.6; Prosser on Torts, 2d Ed. p. 503); that the jury had evidence from which to conclude that the manufacturer could reasonably have foreseen the use of the meat grinder without the guard; and that the operation of the machine to grind meat without the guard in place was not such a use as would relieve a manufacturer of liability for its failure to adopt a safe design. The Court also rejected the second contention advanced by the defendant that the negligent removal of the guard by the plaintiff's co-workers amounted to a superseding or independent cause which broke the causal connection between any negligence of the manufacturer and the injury to the plaintiff, holding that this was a factual question of foreseeability for the jury which found against the defendant (citing Restatement of Torts, Sec. 447, particularly subsection (b) and comments, and Secs. 442, 443, 441, and 440 thereof).

In Green v. Sanitary Scale Company, 296 F.Supp. 625 (U.S.D.C.E.D.Pa., 1969), the Court, applying Pennsylvania law requiring the defendant to design a meat grinder that would be reasonably safe for its intended use, denied motions by the manufacturer of a meat grinding machine and its owner, plaintiff's employer, for a judgment n.o.v. and in the alternative for a new trial and upheld a jury verdict in favor of a 16½ year old boy who while working in the meat market of the third party defendant lost four fingers as a result of placing his hand in the electric meat grinding machine being operated by him without the detachable tray containing a safety guard with which the machine was equipped when originally sold by the defendant manufacturer to the third party defendant.

It can thus be seen that in both of the above cases, the United States District Courts held that the plaintiffs were entitled to recover from the defendant manufacturer even where there was apparently present on the owners' premises a furnished detachable guard-pan, and that the use of these machines without these pans by the plaintiffs did not bar their recovery but that such was reasonably foreseeable by the manufacturers. In the instant case, in addition to the fact that use without the detachable guard-pan was reasonably foreseeable by the manufacturer, it is undisputed, and the Court finds that neither plaintiff nor her husband knew of the existence of the detachable guard-pan designed for use with the Model 4332 meat grinder in question, and thus, there was no independent superseding or intervening cause which broke the causal connection and insulated the defendant herein from liability to the plaintiff.

One of the most frequently cited cases illustrating the right to recover on the theory of failure to warn of the danger surrounding the use of an otherwise reasonably safe product is that of McLaughlin v. Mine Safety Appliances Company, 11 N.Y.2d 62, 226 N.Y.S.2d 407, 181 N.E.2d 430 (1962). The action which was the subject of the Court's opinion was one filed on behalf of a six year old child who suffered third degree burns, against the distributor-packager of magnesium heat blocks designed to supply emergency heat to victims of an accident or sudden illness and which were covered by red insulating material

and could be activated to produce heat of approximately 200° Fahrenheit within two minutes after being activated by the use of a lever and cartridge. On one face of the cardboard container in large black letters were some descriptive words which included a statement, "Always ready for use." In small print on the opposite face of the container there were instructions which concluded with the direction: "Wrap in insulating medium such as a pouch, towel, blanket or folded cloth." A fireman furnished some of these blocks to help revive a six-year old girl who had almost drowned and applied them directly to the child's body beneath the blanket, causing her to suffer severe burns. It was evident that the fireman who had handed the box to a nurse, had actual knowledge from his presence at a demonstration class that they required further insulation. Although the holding in the case was that the verdict for the plaintiff be set aside and the case sent back to the jury on the question of the intervening cause issue in view of the fireman's actual knowledge concerning the need for further insulation, the Court nevertheless stated that the jury was justified in finding that the final words of the instructions, found in small print on the back of the containers, advising use of a further insulating medium, was totally inadequate as a warning commensurate with the risk, and that it was foreseeable that the small print instruction might never be read and might be disregarded even if read. This opinion indicates that negligence might be found from the failure to place a warning on the blocks themselves, as distinguished from the package, because the old blocks were rechargeable and might be used long after the cardboard container had been disposed of. Likewise, this Court finds that the defendant in the case sub judice was negligent in failing to place any warning whatsoever on the manufactured meat grinder concerning the use of the guard, or any other warnings or instructions to be followed in connection with its use or cleaning, particularly since it was reasonably foreseeable that the very thing that did occur would likely occur, that is, through long use and various resales, the detachable guard would become lost or separated from the unit itself.

 The defendant next argues that the potential danger attending the use of this meat grinder was obvious and open to the plaintiff and that she actually knew of this danger, particularly in view of the fact that she caused a hammer handle to be ground up in this machine at a time prior to the time that she suffered her injuries. While obviousness of a danger is a factor bearing on the likelihood of harm, nevertheless any definite requirement that the defect of the danger must be latent seems to revert to the concept that a chattel must be "inherently" dangerous. This concept has been replaced under the modern decisions by the rule that the creation of an "unreasonable" danger is enough to establish negligence; that is, under the modern rule, even though the absence of a particular safety precaution is obvious, there ordinarily is a question of fact as to whether or not a failure to install the device creates an unreasonable risk.[12] Here also there was a complete absence of warning of any kind, including that against using or cleaning the machine without the guard-pan being attached or the machine being unplugged.

 This Court finds as a matter of fact and matter of law that the plaintiff is not barred from recovery because of the doctrine of assumption of risk as it is defined by the Mississippi Supreme Court in the case of Elias v. New Laurel Radio Station, Inc.,[13] in which the Court

---

12. 2 Harper and James, Sec. 28.5; Noel, Manufacturers' Negligence of Design or Directions for Use of a Product, The Yale Law Journal, Vol. 71 at pp. 837–838.

13. 245 Miss. 170, 146 So.2d 558, 561–562 (1962). See also Daves v. Reed, Miss., 222 So.2d 411, 414 (1969) in which the Mississippi Supreme Court stated: "Moreover, 'assumption of risk is a jury question in all but the clearest cases.'"

held that the following elements must be proved by a defendant in order to successfully invoke this rather harsh doctrine as a bar to recovery:

"(1) Knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition."

Of course, plaintiff's conduct may very well have amounted to contributory negligence which will be further discussed herein but which, under the law of the State of Mississippi, a comparative negligence state, does not bar plaintiff's recovery, but would proportionately reduce the amount of damages which plaintiff would otherwise be entitled to recover from the defendant.[14]

The Court finds no merit in defendant's next argument in support of its denial of liability, namely, that the meat grinder in question was manufactured by it "under all standard procedures, patterns and of such materials regularly used by all other reputable manufacturers of such machines" and that it was the only manufacturer providing any type guard for meat grinders at the time it was manufactured and sold. While these factors are certainly relevant and material because they indicate that the same standard procedures, patterns and material of other reputable manufacturers were used by the defendant and thus tend to negate an allegation of negligence, they are not conclusive on this question. Mr. Justice Holmes, in Texas and P. Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905 (1903), stated, "What usually is done may be evident of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." So also, the Court of Appeals for the Sixth Circuit stated in part that " * * * the fact that Northwest conformed to the practice of other airlines in failing to equip No. 44 with radar did not establish its exercise of ordinary care as a matter of law. Customary practice is not ordinary care; it is but evidence of ordinary care."[15] Even though the manufacturer has shown that all reputable manufacturers of meat grinders use the same standard procedures, patterns and material as used by defendant herein in the manufacture of its grinder, this Court finds and holds that the entire industry was lacking in ordinary care.[16] So too, this Court is of the opinion that even if the defendant was the only meat grinder manufacturer utilizing any type guard at the time the subject machine was manufactured, this fact does not exonerate it from liability. The defendant obviously was of the opinion that the use of its Model 4332 meat grinder without the use of the guard constituted substantial danger to those operating it, which prompted it to manufacture and ship the guard with it without fail. It was thus incumbent upon the defendant to manufacture and supply a guard which would afford reasonable protection to the ultimate user and one which he, through the exercise of reasonable care, should know existed and should be utilized in order to prevent his being substantially harmed as a direct result

---

14. Section 1454, Miss.Code of 1942, Recompiled: "In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property."

15. Northwest Airlines, Inc. v. Glenn L. Martin Co., 224 F.2d 120 (C.A.6, 1955), cert. den., 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818 (1956).

16. *Cf.* The T. J. Hooper, 60 F.2d 737, 740 (C.A.2, 1932).

of the dangerous design of the machine. This is illustrated in Smith v. Hobart Mfg. Co., *supra,* in which the United States District Court for the Eastern District of Pennsylvania permitted the jury verdict against the manufacturer to stand on the ground that the use of the meat grinder without a detachable guard was not so unforeseeable as to relieve the manufacturer of liability for its failure to adopt a safe design. This is particularly so in the case sub judice in view of the fact that there was no mechanical method of feeding the grinding device nor a permanently attached narrow neck cylinder enclosing the device nor any warning whatsoever on the grinder or any of its component parts concerning the existence and use of the easily detachable guard. As was said of the refrigerator which cause injury to the plaintiff in the case of Beadles v. Servel, Inc., 344 Ill.App. 133, 100 N.E.2d 405, 411 (1951), this meat grinder was a durable product, and therefore the defendant could readily foresee that it might pass into the hands of second-hand users, as it in fact did. Therefore, the fact that the pamphlet which accompanied the machine gave some warning against inserting hands near the worm while the machine was in operation, and the detachable pan and guard were shipped therewith, would probably constitute adequate notice or warning to the original purchaser and thus bar his recovery; nevertheless, the manufacturer would still be subject to liability for negligence of design causing harm to others whom he should reasonably expect to use the product or be in the vicinity of its probable use. As to such persons, including the plaintiff herein, the product was still unreasonably dangerous, particularly since no warning was placed on or attached to the product itself. In the case of Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970), plaintiff's decedent was killed while working the night shift as a "spotter" for dump trucks used in the construction of a dam when a bulldozer manufactured by the defendant backed into him. The operator of the machine looked to the rear before backing but could not see plaintiff's decedent because there was a substantial blind spot to the rear of the noisy bulldozer because of its unsafe design. The defendant was granted a forced nonsuit based on its successful defense that the danger of being struck was a patent peril and thus the defendant had no duty to install safety devices to protect against an obvious danger despite the fact that plaintiff's expert testified that the blind area could be reduced from a rectangle of 48 feet by 20 feet to a cone shaped area with the maximum length behind the machine of 12 feet by the simple installation of rearview mirrors and that other inexpensive and available safety devices such as a braking amber light or horn to alert persons within the remaining blind area could also have been installed to protect innocent bystanders. The California Supreme Court reversed the lower court holding that permissible issues were raised by the defendants which would justify a jury finding that the manufacturer was guilty of dangerous .design based both on negligence and strict liability; that the modern approach to design liability does not bar recovery solely because the danger of the machine is obvious, and it is no defense simply to show that a purchaser knew of the danger of the product inasmuch as an obvious danger may still be found to be an unreasonably foreseeable danger to the user and bystanders. See also Beckhusen v. E. P. Lawson Company, 9 N.Y.2d 726, 214 N.Y.S.2d 342, 174 N.E.2d 327 (1961).

 The Court further finds that plaintiff has established by a preponderance of the evidence that the above negligence of design on the part of the defendant together with .with the failure to warn was in fact a substantial and proximate contributing cause of plaintiff's following painful, permanent, serious and disabling injuries, sufferings and damages, resulting from her hand being caught in the feed screw or worm of the meat grinder after she apparently and

inadvertently tripped the switch on and off again with no knowledge that she had done so. As a direct result of plaintiff's right hand being caught in and twisted into the feed screw of the 4332 meat grinder, her little finger was amputated by the machine by the time her husband, in response to her scream, ran into the building and released her hand by disassembling the machine. She was rushed to Gulfport Memorial Hospital by Riemann Ambulance where an operation was performed which resulted in the removal of her right index finger. She was hospitalized for 40 days during which time she suffered severe physical pain and mental anguish requiring large amounts of medication and resulting in extreme nervousness. When she was first discharged from the hospital her shoulder and elbow were in a cast and became "frozen". On January 29, 1968, following her discharge of August 8, 1967, she was hospitalized for an additional 19 days and was administered frequent physical therapy including the packing of her hand in ice because of severe pain. She was later hospitalized in the Hospital for Crippled Adults in Memphis, Tennessee, as a charity patient for an initial period of 95 days in extreme pain, with her hand "balled in a knot". Further therapy was administered and an additional operation was performed. She was readmitted to this hospital for an additional period of 48 days, and again on December 7, 1968 for a period of three days. She was rehospitalized for one day on February 11, 1969 and nine more days on March 18, 1969. On May 6, 1969 she was again admitted to the hospital in Memphis for 35 days during which time an operation was performed and another finger removed.[17]

Plaintiff and her husband made gross sales of approximately $60,000 in their business in 1966 and in 1967, approximately 10% of which was profit. They have had no earnings in their business since the day of plaintiff's injury, and she has been unable to engage in any activity, including the keeping of books.

Her total hospital bill for necessary treatment of her injuries amounted to $2478.98 and the medical bill of Dr. Griffin Bland, an orthopedic surgeon of Gulfport, Mississippi, for surgery was $895.00. She also incurred the following medical expenses: T. L. Thomas, Anesthetist, $35.00; Dr. A. G. Tillman, $240.00; and Dr. Kendall Gregory, $75.00.

Plaintiff has been totally disabled from work since her injuries and is 90% permanently and partially disabled. She has gained approximately 50 pounds since the time she was injured. In addition, the physical pain has been severe, and she has suffered and is still suffering from extreme nervousness. Her right hand is completely disfigured and useless. She can barely move her remaining finger and although she has some sensation in this hand, it is much below normal. She was right-handed at the time of her injuries and she still suffers severe, constant, aching pain therein.

Based upon the foregoing, this Court finds that plaintiff has been damaged in the total amount of $30,000.00 and would be entitled to recover this amount from the defendant were it not for the fact that this Court further finds that she was contributorily negligent and that her negligence contributed to her injuries and damages in the amount of 50%. Specifically, the Court finds that plaintiff was negligent in failing to unplug the meat grinder which her husband had plugged in earlier, before she attempted to clean it; in failing to first ascertain that the worm was not turning, that is, that the machine was not "running down" at the time that she inserted her hand into the feed funnel and onto the worm; in failing to exercise reasonable care not to throw the on-off switch operating the machine, which she apparently did, first turning it on and then off despite the fact that the switch which was installed

17. See Exhibits P–6 and 7, pictures of plaintiff's hand.

on the machine by the manufacturer had become worn over a 19 year lifetime through long and continued use making it much easier to turn on and off than it originally was.

Therefore, under Mississippi law, the amount which plaintiff would normally be entitled to recover against the defendant, namely, $30,000.00 is reduced to the amount of $15,000.00 because of the above contributory negligence of the plaintiff, and the plaintiff is entitled to recover from the defendant the amount of $15,000.00, together with all costs of this proceeding. The Motion of the defendant to exclude the evidence and enter a Judgment for the defendant on which the Court reserved ruling when the plaintiff rested, is overruled.

Accordingly, a judgment shall be prepared and presented to the Court by the plaintiff in accordance with the above and foregoing findings of fact and conclusions of law contained in this Memorandum Opinion, within the time and the form prescribed by the Rules of this Court.