**Kerry Donald MONDSHOUR, Infant, by John G. Mondshour, his father and next friend, and John G. Mondshour**

v.

**GENERAL MOTORS CORPORATION.**

Civ. A. No. 19571.

United States District Court
D. Maryland.
Feb. 13, 1969.

John C. Evelius, Baltimore, Md., for plaintiff.

Paul V. Niemeyer, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

NORTHROP, District Judge.

Plaintiff originally filed this suit against General Motors Corporation (GM) in the Common Pleas Court of Baltimore City. GM removed the case to this court based on diversity of citizenship. It has now filed a motion to dismiss the complaint and it is to this motion that the court now addresses itself.

The complaint alleges that GM was negligent in designing a 1948 bus which was sold to the Baltimore Transit Company (BTC). In 1965 (seventeen years later) the plaintiff, a young child of six, was injured when trapped under the right rear wheels of the bus as it departed from its curbside loading zone. The bus did not have a *right* rearview mirror. So that this is perfectly clear, it should be emphasized that the bus in question *did have a rearview mirror located at the driver's left,* but it did not have a rearview mirror on the right side.

Plaintiff contends that a reasonable designer, recognizing that the vehicle would operate in congested areas and would take and discharge young, old, and infirm members of the general populace, should have included a right rearview mirror to enable the driver to see if his doors and wheels were clear. In its motion to dismiss the defendant argues alternatively that he was under no statutory or common-law duty to place a right rearview mirror on the bus and, assuming such a duty, there is no possible proof of factual causation and a lack of legal causation.

Considering the question of duty, GM urges in a two-step argument that duty is a question of law to be decided by the court and that no statutory or common-law duty existed to place safety features on the vehicles it designed and manufactured. The defendant cites Kahn v. Chrysler Corporation, 221 F.Supp. 677 (S.D.Tex.1963); Schemel v. General Motors Corporation, 261 F.Supp. 134 (S.D.Ind.1966) affd 384 F.2d 802 (7th Cir. 1967), cert. denied, 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134 (1968), for the proposition that duty is a question of law. As to the substantive issue, the defendant primarily relies upon two cases, Evans v. General Motors Corporation, 359 F.2d 822 (7th Cir. 1966), and Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950).

In *Evans*, the Seventh Circuit affirmed the lower court's dismissal of a complaint which alleged in substance that the defendant manufacturer was negligent in designing an automobile with an "x" frame, when the injuries sustained in an accident involving that automobile could have been prevented or mitigated by the use of a perimeter or box frame. The court reasoned:

"A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all." 359 F.2d at 824.

In *Campo*, the New York Court of Appeals affirmed the dismissal of a complaint which alleged negligent design of an "onion topping" machine in failing to include a safety device or guard to prevent human hands from being caught in the exposed rollers. Plaintiff contends that *Campo* and *Evans* should not be followed by this court because a change in judicial philosophy concerning imposition of liability in this area is occurring. Plaintiff points out that both cases have been criticized. See Notes in 16 De Paul L.Rev. 261 (1966); 80 Harv.L.Rev. 688 (1967) and see also Harper and James, The Law of Torts § 28.5 p. 1542.

While Campo v. Scofield has become a landmark decision, it is true that a new awareness of the problem of safe automotive design has occurred, see Nader and Page, Automobile Design and the Judicial Process, 55 Calif.L.Rev. 645 (1967); Nader, Automobile Design: Evidence Catching Up With the Law, 42 Denver Law J. 32 (1967). This awareness has been primarily manifest by legislative action such as the National Traffic and Motor Vehicle Safety Act, 15 U.S.C. § 1381 et seq. There has also been evidence of a shift in judicial thought which has eroded the *Evans* rationale. As stated in Larsen v. General Motors Corporation, 391 F.2d 495, 506 (8th Cir. 1968):

"The common law is not sterile or rigid and serves the best interests of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing needs of our time."

In Gossett v. Chrysler Corporation, 359 F.2d 84, 87 (6th Cir. 1966), while reversing a jury award in a suit for negligent design of a truck hood-latch, the Sixth Circuit did recognize a duty to design the product with reasonable safeguards stating:

"It is the duty of a manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended. This duty includes a duty to design the product so that it will fairly meet any emergency of use which can reasonably be anticipated."

The Restatement (Second) of Torts, § 398 (1965) which reads:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

adopts a somewhat similar posture.

*Larsen* and the others are indicative of the reexamination and reevaluation which is presently being done in this area. What was reasonable in the past may not be reasonable today. However, while the *Campo* rationale is not to be universally applied, it is not to be discarded. See Goldsmith v. Martin-Marietta Corp., 211 F.Supp. 91 (D.Md.1962).

■ This court sits in judgment of a bus which was designed before 1948. The law cannot be administered in a vacuum. The reasonableness of defendant's conduct must be judged in light of the circumstances existing at that time, rather than the present.

■ Traffic conditions have changed dramatically since 1948 both quantitatively and qualitatively. While the very prudent designer may have included a right rearview mirror in this design, GM is to be judged by a standard of reasonable safe design, not safest possible design. And, of course, the common law does not require that a designer and/or manufacturer *insure* that his product cannot possibly cause an injury. It must also be noted that the purchasing bus line is in a far better position to know of the local conditions its busses will encounter than GM.

■ Considering these circumstances and the legal attitudes prevalent in that post-war era, the court is of the opinion that no reasonable man could conclude that it was unreasonable to design a bus in 1948 without a right rearview mirror.

■■ This court intimates no opinion whatsoever as to the foreseeability of this injury or the reasonableness of the bus company's conduct as these questions will be decided by the Maryland courts.[1] However, the court does alternatively conclude that, assuming *arguendo* that GM was negligent in its design, the later negligence of the BTC in failing to inspect and properly maintain its equipment, including the installation of safety devices to meet changing conditions in the seventeen years since the purchase of that bus, would be a superseding intervening cause and limit the liability of GM. As a general rule the original wrongdoer's liability will be terminated by later events if those events were not foreseeable. See Maryland Law Encyclopedia, Negligence § 68. Where the later event is the negligence of one who had a duty to act, courts have not especially favored the application of the foreseeability test. See Sider v. General Electric Co., 203 App.Div. 443, 197 N.Y.S. 98 (1922) where the manufacturer was liable for negligently placing packing blocks in a transformer, although the purchaser was also negligent in failing to inspect and test the transformer before operating it. See also 2 Harper and James, Legal Cause § 20.5 p. 1146, and Liability of Suppliers of Chattels, § 28.10, 1555–57 (1956). But certainly that principle seems well applied in cases where an extended period of time has lapsed between the negligent conduct and the injury and where the primary fault, if any, would lie with the later negligence.

If the passage of time would negate liability where there was negligent conduct, then most assuredly a failure to include a device later thought to be a necessary safety feature but not so used when the accused equipment was manufactured cannot be found actionable.

While the pleadings must be viewed in a light most favorable to the plaintiff, this court for the above reasons orders this 13th day of February, 1969, that the motion of defendant to dismiss the complaint be and it is hereby granted.

1. This court has been informed that suit has been filed against the BTC in the state court concerning this matter.