**Mrs. Frances Buckley WARD, Plaintiff, Appellee, Cross-Appellant,**

v.

**The HOBART MANUFACTURING COMPANY, Defendant, Appellant, Cross-Appellee.**

No. 30809.

United States Court of Appeals, Fifth Circuit.

Oct. 14, 1971.

**1178**

———————◆———————

Jerry O. Terry, P. D. Greaves, Gulfport, Miss., William H. Wallace, Cleveland, Ohio, Greaves & Terry, Gulfport, Miss., James T. Crowley, Thompson, Hine & Flory, Cleveland, Ohio, for defendant-appellant.

Leonard A. Blackwell, Jr., Estes & Blackwell, Gulfport, Miss., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

The resilient springboard of diversity jurisdiction once again catapults the federal courts into the midst of state tort law. In this nonjury, products liability case, Mrs. Frances Ward, appellee, cross-appellant (Mississippi resident), seeks to recover damages for severe injuries sustained to her right hand while cleaning a meat grinder manufactured by Hobart Manufacturing Company (Hobart), appellant, cross-appellee (citizen of Ohio). The district judge made extensive findings of fact and conclusions of law which are set forth in his memorandum opinion reported in 317 F.Supp. 841 (S.D.Miss. 1970). He determined damages to be in the amount of $30,000 but reduced that sum to $15,000 because of the contributory negligence of Mrs. Ward, in accordance with the comparative negligence rule of Mississippi.[1] We find the district court in error in certain of its key findings of fact and conclusions of law and reverse for the reasons which follow.

In her cross appeal, Mrs. Ward contends that the lower court erred in finding her guilty of contributory negligence and thus in reducing her damages. Because we reverse as to liability on the part of Hobart it is unnecessary to consider this contention.

Hobart raises several issues on appeal, but in view of our conclusion with respect to two of those issues we find it unnecessary to reach the others.[2] The district court found Hobart liable on two grounds: (1) negligence in the design of the grinder and (2) negligence in failing to warn of the danger involved in using the grinder. Hobart argues that both conclusions are erroneous.

In order to follow clearly the reasoning upon which we base our reversal, a review of the facts is necessary. In 1965, Mrs. Ward and her husband purchased a second hand meat grinder, Model Number 4332, designed and manufactured by Hobart in 1948.[3] It was used in their small restaurant.

---

1. Miss.Code Ann. Tit. 10, § 1454 (1942, recomp. 1956). The district court held that Mrs. Ward was contributorily negligent and that her negligence contributed to her injuries and damage in the amount of 50%. Specifically, the court found her negligent in failing to unplug the meat grinder before she attempted to clean it; in failing to ascertain that the worm was not turning before inserting her hand into the feed tunnel; and in neglecting to place the switch which controlled the grinder's operation in the "off" position.

2. In addition to the issues discussed in the text, questions of proximate cause and assumption of risk were also raised by Hobart.

3. We detect some factual inaccuracies in the district court's recitation of the facts. It is stated that the machine was purchased "as a used machine by *plaintiff's husband* from one E. C. Summerlin from Gulfport, Mississippi on August 17, 1965." It is later stated, in referring to plaintiff and her husband, that "on August 17, 1965 *they* purchased a second hand or used model No. 4332 meat grinder * * in order to utilize it in making sausage in their business establishment." (emphasis added).

Additionally, it is first stated that Mrs. Ward received "a severe and crippling injury to her right hand which occurred on June 29, *1970*." Later it is stated that Mrs. Ward and her husband used the

When this grinder was sold to the original purchaser,[4] part of its standard equipment was a detachable guard and feed pan as well as a stomper (for pushing meat into the machine), which were intended as safety devices to protect the hands of the user from coming in contact with the "worm mechanism" or auger of the grinder. The guard and pan were attached to the grinder proper by bolts. Included with each Model Number 4332 was a set of instructions which in part warned that the user's hands should be kept out of the hopper (into which the meat was fed) while the grinder was in operation. From the evidence presented, Hobart, in 1948, was apparently the only manufacturer of meat grinders which included a safety guard of any kind with its product. When the Wards purchased this second hand grinder they did not receive the guard and feed pan, stomper, or warning instructions. There was no evidence that Hobart had any knowledge of the sale to the Wards.

During the period of almost two years between the date of purchase by the Wards and Mrs. Ward's injury, the grinder was in constant use, being operated every other day both by Mrs. Ward and her husband. At the trial, Mrs. Ward testified that she had taken the grinder apart several times to clean it. She also testified that on one occasion prior to her accident she used a hammer handle as a stomper to push meat into it; the handle was caught in the worm and ground up.

On June 29, 1967, Mrs. Ward was doing last minute cleaning around the machine. It had been taken apart and cleaned by her husband earlier in the day. At the trial she described how her injuries occurred:

Q. Will you tell the Court how you were injured, so far as you can remember, on that day?

A. Well, its hard for me to remember, but I was wiping the machine and it has on the back a switch and evidently in wiping it I could have turned it on and off inadvertently, but it was not on at the time I looked down in to be sure I was going to wipe down in where we put the meat to be sure it was good and clean, and I was just going to go over to clean it.

Q. And then what happened?

A. It caught my hand.

Upon cross-examination she further testified:

Q. Did you recall looking over into the bell?

A. I looked into the bell but whether I even noticed the worm I'm not sure.

Q. In fact, you don't know whether you turned it on or off or just what the machine was to your recollection?

A. I do know that I would not have stuck my hand down in the machine, knowing as much as I do about it, with it turned on.

It was demonstrated at the trial and acknowledged by Mrs. Ward that the worm continues to turn after the grinder is turned off. She estimated that it ran for about a minute after being cut off. Her expert testified that it continued to run from two to twenty seconds. It was further demonstrated at the trial that the turning worm could be heard from a

---

grinder from the date of purchase "until June 29, *1967* when plaintiff was injured."

These minor self-correcting errors have not influenced our decision because we believe that the true date of injury is June 29, 1967 (not June 29, 1970); and that the question whether only Mr. Ward or both Mr. and Mrs. Ward purchased the grinder is not of controlling consequence.

4. Hobart's records showed that the original purchaser was Hinote Packing House in Robertsdale, Alabama. There was no evidence to show who owned the grinder during the 17 year period between the original purchase date and the date of the Ward's purchase except E. C. Summerlin of Gulfport, Mississippi who sold it to the Wards.

distance of approximately twenty-five feet after the grinder was shut off.

At the time of the injury Mrs. Ward's husband responded to her cry for help. He testified that when he reached her, the switch was in the "off" position. One of her fingers was completely cut off and severe injuries to other fingers necessitated their surgical amputation.

■ In this diversity case we are bound by *Erie* principles and the law of Mississippi controls.[5] The difficulty presented arises from the fact that neither the district court nor the parties have cited a decision by the Mississippi courts clearly delineating the state law in a "pure" negligent design case. Our research has not revealed such a decision.

■ The Mississippi case most nearly in point is Harrist v. Spencer-Harris Tool Co.[6] In *Harrist,* the plaintiff alleged that the negligent manner in which an oil drilling rig was planned, designed and manufactured, constituted a breach of an implied warranty owed by the seller to the purchaser. The plaintiff, as an employee of the purchaser, urged abrogation of the privity requirement which then prevailed in Mississippi and which permitted only parties to the sales contract to recover.[7] The state supreme court, however, found it unnecessary to rule on the privity question holding that without regard to privity, because the alleged defects were not "latent or concealed" it would be required to affirm the judgment for the manufacturer.[8] The court in *Harrist* followed what appears to be the general rule in negligent design cases: where the alleged danger is open and obvious and the manufacturer has done everything necessary to insure that the machine will function properly for its designed purpose any duty owed to a future user[9] has been fulfilled.

5. The district court recognized that it was bound by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We accord proper consideration to the "rational divination" of the district court to determine what decision the Mississippi Supreme Court would reach if and when the question here presented is resolved by that court. Nevertheless, we cannot adopt the district court's view of the applicable state law if in our judgment that view is contrary to the more cogent reasoning of the best and most wide-spread authority. Otherwise appellate review in a substantial number of diversity cases which come before this court would be effectively eliminated. Stool v. J. C. Penney Co., 404 F.2d 562 (5th Cir. 1968).

6. 244 Miss. 84, 140 So.2d 558 (1962).

7. Prior to the abolition of the privity requirement a remote user was largely prohibited from bringing a tort action against the original manufacturer. That requirement met its demise in Mississippi in State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss.1966). Since *State Stove,* Mississippi plaintiffs appear to have relied exclusively on strict liability rather than negligence in products liability cases. See General Motors Corp. v. Howard, 244 So.2d 726 (Miss.1971); Walton v. Chrysler Motor Corp., 229 So.2d 568 (Miss. 1969); Ford Motor Co. v. Cockrell, 211

So.2d 833 (Miss.1968); Ford Motor Co. v. Simpson, 233 So.2d 797 (Miss.1970) was referred to as a negligent design case but in its opinion the court spoke in terms of strict liability. The facts of the case were similar to those in *Walton, supra,* and the court quoted at length from that opinion.

The essential difference in strict liability and negligent design is that in the former it is only necessary to prove that the product was defective when it left the manufacturer's hands—negligence need not be proved. However, in strict liability cases it must be proved that there was no substantial change in the product from the time of manufacture until it reached the consumer. State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss. 1966).

The complaint in the instant case contained a count in strict liability. The district court, however noted that Mrs. Ward did not pursue that theory. Consequently, the present case was decided solely on negligence principles.

8. 140 So.2d at 561.

9. See Kerber v. American Machine & Foundry Co., 411 F.2d 419 (8th Cir. 1969); Zahora v. Harnischfeger Corp., 404 F.2d 172 (7th Cir. 1968); Messina v. Clark Equip. Co., 263 F.2d 291 (2d Cir.) cert. denied, 359 U.S. 1013, 79 S.Ct. 1150, 3 L.Ed.2d 1037 (1959); Stevens v.

However, the district court in the instant case stated that this "concept has been replaced under the modern decisions by the rule that the creation of an 'unreasonable' danger is enough to establish negligence."[10] We cannot agree with the district court's conclusion as to the "modern decisions", nor do we consider it appropriate to rely solely upon *Harrist* and the "latent or concealed" or "open and obvious" rule. Although here we are presented with the particular problems involved in evaluating a manufacturer's design, the case is still based on negligence. Consequently, we look beyond *Harrist* to other Mississippi law for guidance on its general negligence principles.

The district court concluded that the Mississippi Supreme Court "impliedly" approved a negligent design action in Walton v. Chrysler Motor Corporation.[11] *Walton,* however, was decided on principles of strict liability, not negligence. The court's enumeration of the elements of a negligence action was simply as an aid in its differentiation of negligence and strict liability.[12]

Despite its strict liability character, *Walton* serves to remind us of the four basic elements of a traditional negligence action: (1) plaintiff must be protected under some rule of law against defendant's conduct (duty); (2) defendant's conduct must have violated this duty (breach); (3) plaintiff's injury must be the result of defendant's conduct (causal relationship); and (4) plaintiff must have suffered a loss (damage).[13] Only when items (1) and (2) are shown is it possible to proceed to a consideration of item (3) since a duty and a breach of that duty are essential to a finding of negligence under the traditional and accepted formula.[14] A defendant's act or failure to act may be the cause in fact of another's injury, but if the act was not negligent there is no liability. It is in the determination of negligence that we feel the lower court erred. It is our conclusion that the lower court's finding of negligence both in the design of the grinder and in the failure to warn are clearly erroneous.[15] We turn first to the claim of negligent design.

Durbin-Durco, Inc., 377 S.W.2d 343 (Mo. 1964) ; Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950). Contra Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970) [in support of its position the California court cites only two treatises—no cases].

10. While the district court's approach may be representative of the "modern decisions", it still is the minority view. The California case of Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970), discussed by the lower court in the instant case is perhaps the leading case on this point.

11. 229 So.2d 568 (Miss.1969).

12. Id. at 573.

13. Id. These elements have been associated traditionally with negligence. See W. Prosser, Law of Torts 146 (3d ed. 1964).

14. The Mississippi Supreme Court has said that negligence is "the result of the failure to perform a duty, therefore actionable negligence cannot exist in the absence of a legal duty to an injured plaintiff."

Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473, 475 (Miss.1967).

15. F.R.Civ.P. 52. The decisions of the Mississippi Supreme Court indicate that whether a duty exists in a negligence case is a question of law to be determined by the court. See Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss.1967) ; Faulkner Concrete Pipe Co. v. Fox, 248 Miss. 50, 157 So.2d 804 (1963). This is true even though the Miss.Code Ann. tit. 10, § 1455 (1942, recomp. 1955) provides: "All questions of negligence and contributory negligence shall be for the jury to determine." Once it is decided that there is a duty, the question of the extent of that duty, or the appropriate standard of conduct to be applied seems to be a mixed question of law and fact. See Walton v. Chrysler Motor Corp., 229 So.2d 568 (Miss.1969) ; Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 140 So.2d 558 (1962). However, since whether law or fact we find the lower court in error it is unnecessary to dwell on this point.

## I. *Negligent Design*

■ Without question Hobart was under a duty to design a reasonably safe meat grinder. Hobart does not contest this obligation; it does contest the district court's finding that its design was unreasonable. Such a determination must not be made in the abstract; it is necessary to measure the reasonableness of a product's design against objective standards. The criteria most frequently applied have been: (1) the conformity of defendant's design to the practices of other manufacturers in its industry *at the time of manufacture;*[16] (2) the open and obvious nature of the alleged danger;[17] and (3) the extent of the claimant's use of the very product alleged to have caused the injury and the period of time involved in such use by the claimant and others prior to the injury without any harmful incident.[18]

The district court acknowledged that Hobart's design conformed with the standards prevailing in 1948 among those engaged in manufacturing meat grinders. Nevertheless, it concluded that even if Hobart exceeded those requirements, it and the entire industry "were lacking in ordinary care." [19] The only possible basis for such a conclusion is in the conflicting testimony of opposing experts who appeared for the parties.

Mrs. Ward presented no substantial evidence of standards prevailing at the time of manufacture. The only evidence of design standards introduced by her was through her expert, Dr. Carley, a highly qualified mechanical engineer. Hobart contends that Dr. Carley was not qualified as an expert in this particular case, or in the alternative, that even if he were qualified, no evidentiary foundation was laid that would permit his testimony to be admitted as to the design of a meat grinder.

■ We are fully aware of the broad discretion vested in the trial court in passing upon the qualifications of an expert, especially in non-jury cases where the judge is presumed to consider only legally admissible evidence. While we have serious doubts as to the qualifications of Dr. Carley to testify as to the design of meat grinders and the admissibility of his testimony as it related to the grinder here involved, we are reluctant to reverse on the evidentiary rulings of the trial court. Nevertheless, even giving full consideration to the foregoing principles we are clearly convinced that the trial judge gave undue weight and consideration to this testimony. In our view the testimony of Dr. Carley does not rise to the level of substantial evidence sufficient to support the conclusion of the court that Hobart was negligent in

16. The courts are uniformly in agreement that reasonableness of conduct must be judged in light of the circumstances at the time of manufacture. Vroman v. Sears, Roebuck & Co., 387 F.2d 732, 737–738 (6th Cir. 1968) (no consideration to be given design standards promulgated subsequent to sale of lawn mower) ; Cox v. General Electric Co., 302 F.2d 389 (6th Cir. 1962) ; (evidence of design changes which improved safety subsequent to accident inadmissible) ; Pontifex v. Sears, Roebuck & Co., 226 F.2d 909 (4th Cir. 1955) (not negligent to sell old model machine not equipped with safety features found on later models) ; Wilson v. Savage Arms Corp., 305 F.Supp. 1163 (E.D.Pa. 1969) (evidence as to design standards subsequent to time of manufacture properly excluded) ; Mondshour v. General Motors Corp., 298 F.Supp. 111, 114 (D.C. Md.1969) "(reasonableness of defendant's

conduct must be judged in light of the circumstances existing at that time [of manufacture], rather than the present").

17. While it is generally held that if a danger is open and obvious there can be no liability for negligence in design, see note 9 *supra*, we agree with the district court that given certain facts even an open and obvious danger might be an unreasonable one. Thus, we treat the open and obvious nature of a danger as only one factor in determining reasonableness of design.

18. See Tomicich v. Western-Knapp Engineering Co., 423 F.2d 410, 413 (9th Cir. 1970) ; Marker v. Universal Oil Products Co., 250 F.2d 603, 606 (10th Cir. 1957).

19. Ward v. Hobart Manufacturing Co., 317 F.Supp. 841, 853 (S.D.Miss.1970).

the design of the grinder here involved. Nor do we think that the other evidence is sufficient to support such a conclusion. Accordingly, it is our judgment that the finding of negligence in the design of the grinder is clearly erroneous.

Although Dr. Carley has impressive credentials in the field of mechanical engineering, he had almost no experience in the design of any type of machinery [20] and no experience in the design of meat grinders. He had done no research on the design of meat grinders in 1948. In preparing to testify, Dr. Carley had looked only at current Hobart brochures, had made a "cursory" examination of some Pennsylvania and Ohio safety regulations, and had talked to a few local butchers about their machines.[21] There was no testimony as to the time of manufacture of those machines. Certainly,

Dr. Carley's testimony as to the mechanical operation of the grinder was within the scope of his expertise. Beyond that, no foundation was laid which would justify reliance on his testimony as to the proper design of a meat grinder in 1948 or even in 1970. In our judgment his testimony does not support the conclusion that Hobart was negligent in its design of the grinder in question.

The only evidence of the custom, practice and standards followed in the meat grinder industry in 1948 was presented by Hobart. The two witnesses who testified on this issue were employees of Hobart at the time of the trial and were intimately connected with the meat grinder industry in 1948, one as a sales representative for Hobart products, the other as a design engineer.[22] Both testified

---

20. The following is from the testimony of Dr. Carley:

Q. Doctor, throughout this training have you had occasion to draw a design for any particular piece or type of industrial machinery.

A. During my academic training, no, I have not. I have had occasion to do this in consultant work since that time.

Q. Have you ever had an occasion to design any type of mechanical equipment such as the one in question in this lawsuit.

Dr. Carley then testified that his only actual design experience was participation in the design of a "sawmill rig to feed logs into the sawmill, hydraulic unit to control the handling of logs." The extent of his participation is unknown.

21. With respect to the particular meat grinder here involved, Dr. Carley further testified as follows:

Q. Other than the observations you made of the physical appearance of the grinder, I will ask you if you did any research of product design information in the particular area of meat grinders.

A. I read some brochures from the Hobart Company describing the current products that they have, I made a cursory examination of some Pennsylvania and Ohio safety regulations, and spoke to several butchers around Starkville. That's about the extent.

Q. Did you examine some of the grinders which those butchers had?

A. Yes, and not having any immediate familiarity with meat grinders I

took advantage of the experience of three or four butchers in the immediate vicinity of my home in handling their affairs, and examined some of the meat grinders that they were using at the time so that I would have some practical information about the grinder.

\* \* \* \* \*

Q. Have you studied the designs of any of the other manufacturers in the art of manufacturing, designing and making ready for the public certain types of machinery such as we have here?

A. No.

Q. You haven't studied anyone's excepting Hobart's?

A. That's correct.

Dr. Carley consulted some Ohio regulations which apply to grinders but such regulations applied only "after the effective date of this Code." The Code was published in 1967. He also referred to some Pennsylvania regulations of a much earlier date which appeared to have no bearing upon the issue of negligent design involved in the instant case.

In Wilson v. Savage Arms Corp., 305 F.Supp. 1163 (E.D.Pa.1969), the court's denial of plaintiff's motion for a new trial was predicated in part on the lack of knowledge of plaintiff's expert of the design standards *at the* time the product involved was manufactured.

22. Mr. Ellingson, the sales agent for Hobart in 1948, testified that in 1948 he sold the Model 4332, that he often received competitor's machines on trade upon sale

that in 1948 none of Hobart's competitors manufactured a grinder with a safety guard—that Hobart was the pioneer in the use of safety devices in the meat grinder industry. The district court, however, gave little weight to this testimony. The court appeared to rely more heavily upon the evidence that in *subsequent models* the guard was either permanently attached, or that such machines could not be operated without a guard; the testimony of one of Hobart's experts that whenever he saw one of the grinders being used without the guard he warned the user of the danger; and the testimony of Hobart's director of engineering that the company had considered but rejected the idea of recalling the model in question for the installation of more permanent safety features or of warning original purchasers that the grinder should not be used without the guard.[23]

■ The court clearly erred in relying on the existence of safety devices instituted subsequent to the year 1948.[24]

The mere isolated fact that a Hobart employee advised an owner of one of their products to use his meat grinder in the manner intended has no bearing on reasonable design standards in 1948.[25] Similarly, the fact that Hobart considered but decided against taking additional measures to protect the users of its product adds little weight in a determination of whether the design of the grinder was reasonably safe when it was manufactured.

Perhaps if Hobart had been conducting its business in a vacuum in 1948 its knowledge of the risk of operating the grinder without a guard might be more significant. But in 1948, Hobart, as it is today, was a participant in the American system of free enterprise which thrives on competition. Safety is not the only criterion a manufacturer considers when designing a product. He looks as well to the expectations and desires of the public. Such expectations are also an important consideration in determining what is a reasonable stand-

---

of Hobart machines, and that he frequently attended trade fairs where he had an opportunity to observe the equipment of other manufacturers.

Mr. Geiger, a design engineer with Hobart in 1948, testified that he routinely attended various trade shows in 1948 which displayed products by Hobart and by various other manufacturers.

23. Only briefly do we touch upon the district court's intimation that there was an obligation upon Hobart either to recall its 1948 product or to issue a warning of the danger of using it without a guard. Without attempting to cite authority for our position, we simply find such a requirement totally unreasonable, particularly where as here the product can be used safely so long as the user exercises reasonable care in operating the machine. Moreover, there is no evidence that Hobart even knew that the Wards had purchased the grinder second, third or fourth hand without the guard, feed pan or instructions.

24. See note 16 supra. If it became the practice of the courts to point to later safety innovations as grounds for holding earlier designs unreasonable, manufacturers would be discouraged from improving

the safety features of their products. The development of seat belts provides an analogy. Suppose a car was manufactured without seat belts at a time, say 1948, when seat belts were all but unknown—certainly not in wide use. Would it be reasonable to hold the automobile manufacturer liable in 1970 for an injury sustained in the 1948 vehicle, the cause of which, for the sake of argument, could be attributed directly and solely to the lack of seat belts? We think not. The Mississippi Legislature has recognized that it should not attempt to hold all prior manufacturers to current standards. The Mississippi seat belt statute which took effect in 1962 requires belts only on cars manufactured after 1963, Miss.Code Ann. tit. 30, § 8254.5 (Supp.1970). It would be totally unreasonable to make such standards retroactive.

25. No evidence was presented which would indicate the level to which engineering design technology had developed in 1948. Dr. Carley did give his opinion, but he was not an engineer at the time and no foundation was laid which would support his opinion, i. e. no evidence that he had made inquiries or studied textbooks of that period, etc.

ard in a products liability case. There was evidence to the effect that in 1948 the public preferred a meat grinder without a guard—in order to speed up the grinding process. Nevertheless Hobart did provide a guard, pan and stomper for the model grinder under consideration.

Neither the public nor the courts were as safety conscious in 1948 as they are now. The consuming public has more often, and perhaps traditionally, been more interested in expediency than in safety. In recent years the public demand has shifted substantially to a serious interest in designs that are safe as well as efficient or aesthetically pleasing.

▉ Without placing the question of Hobart's negligence in its proper setting the district court concluded that the standards of an industry are not controlling,[26] and hence that the entire meat grinder industry was lacking in ordinary care in 1948. Where there is strong evidence to counter the customary practices of an industry at time of manufacture we would agree, but in the present case no evidence and little case law was presented which would indicate that the standards to which Hobart adhered in 1948 were unreasonable.

The evidence shows that Hobart led the meat grinding industry in safety design in 1948. Its products had safety features not included on the products of its competitors. The two cases cited by the district court in support of its find-

ing that the entire industry was lacking in ordinary care are clearly distinguishable.[27] In neither case was the question of customary practice related to negligence in design. In both cases a carrier rather than a manufacturer had failed to install a safety device which was available but in little use. Carriers have traditionally been held to a higher standard of care than others. And in one of these cases the court refused to hold the carrier liable where the effectiveness of the safety device had not been proven.[28]

Other cases relied upon by the district court in reaching its determination that Hobart's meat grinder was not reasonably safe are equally inapposite. The court placed much emphasis on Smith v. Hobart Manufacturing Co.[29] and Green v. Sanitary Scale Co.,[30] both of which are meat grinder cases. However, the district court failed to note that both cases were reversed on appeal—in favor of the defendant manufacturers. The Third Circuit reversed in *Green* on the ground that the trial court erred in refusing to instruct the jury on the issue of plaintiff's assumption of risk in inserting his hand into the grinder. In *Smith* the same court of appeals held there was insufficient evidence to establish a duty on the part of the manufacturer.

While certain of the language of *Smith* and *Green*, when detached from the results reached, lend support to the lower court's decision, there is more substantial authority to the contrary. The Fourth

26. Under Mississippi law custom and usage are proper factors to consider in determining a standard of reasonableness but are not controlling on the issue of negligence vel non. See Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216 (Miss.1969).

27. The two cases cited by the district court are Northwest Airlines, Inc. v. Glenn L. Martin Co., 224 F.2d 120 (6th Cir. 1955), cert. denied 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818 (1956) and The T. J. Hooper, 60 F.2d 737 (2d Cir.) cert. denied, Eastern Transportation Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932). In *Northwest* plaintiff airline's failure to install a radar

device on its aircraft where radar had been used successfully only in military planes was held not to be contributory negligence. In *T. J. Hooper* tug boats were held unseaworthy because they lacked radio receiving sets which were available and which were being used on other ships.

28. Northwest Airlines, Inc. v. Glenn L. Martin Co., 224 F.2d 120 (6th Cir. 1955), cert. denied 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818 (1956).

29. 185 F.Supp. 751 (E.D.Pa.1960), rev'd, 302 F.2d 570 (3d Cir. 1962).

30. 296 F.Supp. 625 (E.D.Pa.1969), rev'd. 431 F.2d 371 (3d Cir. 1970).

Circuit's decision in Tuttle v. U. S. Slicing Machine Company [31] is clearly more applicable precedent.[32] The facts of *Tuttle* and the instant case are very similar. There the supermarket meat grinder was four years old; it had been sold with a protective guard which had at some unstated time been removed. The injured plaintiff had been taking the machine apart and reassembling it almost weekly for a year; his hand was injured while stuffing meat into the machine without a wooden pusher provided for that purpose. The trial court's summary judgment for the defendant was affirmed by the Fourth Circuit.

Mondshour v. General Motors Corporation,[33] also supports our conclusion with clear and cogent reasoning. With regard to a plaintiff's claim in 1965 that General Motors was negligent in not designing a bus in 1948 to include a right rear view mirror, the district court noted that the reasonableness of a design must be judged in light of the circumstances existing at the time of manufacture. The court refused to judge General Motors by the safest possible design but rather according to standards applicable to a reasonably safe design. The court's summation is significant: "No reasonable man could conclude that it was unreasonable to design a bus in 1948 without a right rear view mirror." [34]

The "reasonableness" concept of *Mondshour* provides a tempting place for the conclusion of our negligent design discussion; however, as we have indicated there are other factors in this case in addition to the customary practices which must be considered.

The district court recognized that "obviousness of a danger is a factor bearing on the likelihood of harm," but largely discounted that consideration in favor of a determination of whether the alleged danger is so unreasonable as to establish negligence. This approach differs little from our own; however, we, in contrast to the district court, give full consideration to the "open and obvious" factor. The trial court failed to even mention the Mississippi Supreme Court's *Harrist* [35] decision which as we noted earlier is the Mississippi case most nearly in point.

The *Harrist* court held that because the alleged defects in design were "apparent and obvious to a casual observer" there could be no liability. Cited in support of this proposition was the often cited New York case of Campo v. Scofield.[36] There the New York Court of Appeals set forth three criteria for use in negligent design cases: (1) whether the machine functions properly for the purpose for which it was designed, (2) whether the machine is without latent defect and (3) whether operation of the machine creates a danger unknown to the user. "In other words," added the court, if the danger is "obvious and patent to all" the manufacturer "is under no duty

---

31. 335 F.2d 63 (4th Cir. 1964).

32. In *Smith, supra,* the owner of the meat grinder had purchased it from Hobart only three months prior to the accident. There was no issue as to the standards to be applied to a used machine. And in *Green, supra,* while it was not stated how long the machine had been in use, the court did find that current Pennsylvania safety regulations were applicable in determining whether the manufacturer's design was reasonably safe. The use of current regulations would indicate that the machine did not pre-date the regulations.

33. 298 F.Supp. 111 (D.C.Md.1969).

34. Id. at 114.

35. Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 140 So.2d 558 (1962).

36. 301 N.Y. 468, 95 N.E.2d 802 (1950). The rule as stated in *Campo* has been followed with only slight variations in a majority of other jurisdictions. See Kerber v. American Machine & Foundry Co., 411 F.2d 419 (8th Cir. 1969); Zahora v. Harnischfeger Corp., 404 F.2d 172 (7th Cir. 1968); Messina v. Clark Equip. Co., 263 F.2d 291 (2d Cir. 1959); Stevens v. Durbin-Durco, Inc., 377 S.W.2d 343 (Mo.1964). Contra Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229 (1970) (in support of its position the California court cites only two treatises—no cases).

to render a machine or other article 'more safe.' "[37]

■ Here there was no question that the meat grinder properly ground meat and it would seem safe to assume that the grinder adequately performed that function. From the evidence presented it can hardly be argued that the danger involved was a latent one. And it is undisputed that Mrs. Ward was fully cognizant of the danger of placing one's hand in the grinder.[38] However, she argues that the danger arose from using the grinder without a guard and that she was not aware that a guard was available. We find no merit in this argument. Had she known a guard was available, she would have been no more aware of the actual danger involved. Furthermore, the guard was designed to protect one from injury while the grinder was being used to grind meat. When Mrs. Ward was injured, she was cleaning the grinder. A perfectly safe and reasonable method was incorporated into the machine's design to prevent injury while cleaning—unplug it, or make certain the switch was turned off. In the event one forgot to unplug the grinder before cleaning, there was an unobstructed view of the grinding mechanism and the auger or worm could be heard up to 25 feet away while turning. Without question the open and obvious nature of the danger which accompanied the use of the grinder involved here can only add weight to the reasonableness of Hobart's design.

Of less weight but also tilting the scales in Hobart's favor is the long period of time which its product had been on the market, apparently with few accidents. The Hobart Model 4332 meat grinder was estimated at the trial to have a life expectancy or from fifteen to thirty years. There was no estimate at the trial as to the number of those machines still in use, or how many were manufactured. But it is a reasonable assumption that the number was substantial since the evidence indicated that Hobart is one of the largest manufacturers of meat grinders in the United States. Yet Mrs. Ward could cite only one other instance of an injury involving a similar Hobart grinder. Further evidence in support of the reasonableness of Hobart's design is found in Mrs. Ward's own use of the product for almost two years without incident.

■ Thus, while none of the preceding factors alone might be controlling, when considered as a whole we find the standard which Hobart followed in designing its meat grinders in 1948 was a reasonable one, consequently it discharged any duty owed to a future user such as Mrs. Ward. Hobart's design was not the ultimate in safety, it was not accident proof or fool-proof, but those have never been the standards to which a manufacturer has been held.[39]

37. 95 N.E.2d at 804. In addition to *Harrist* there are other indications that the Mississippi Supreme Court might wholly follow *Campo*. In Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss.1967) that court in a trip and fall accident case held that where a step-off was not "inherently dangerous" but "obvious, open and apparent" the plaintiff was precluded from recovery. Id. at 477.

38. Mrs. Ward's testimony which follows illustrates her awareness of the danger involved:

Q. In other words, you used the hammer handle as a stomper to push the meat into it?
A. We didn't have a plunger.
Q. And you used a hammer handle to do this with?
A. Yes.
Q. And what happened to the hammer handle?
A. It ground it.
* * * * *
Q. Now, Mrs. Ward, of course the day you ground up the hammer handle in the machine, you were aware at that time that anything that got into the machine would be ground up, were you not?
A. I sure was.

39. In Walton v. Chrysler Motor Corp., 229 So.2d 568 (Miss.1969), the Mississippi Supreme Court stated that a manufacturer is not an insurer against accidental injury arising out of the use of his product. See Warner v. Kewanee Machinery & Conveyor Co., 411 F.2d 1060, 1066 (6th Cir.

## II  Negligent Failure to Warn

■ Interrelated with negligent design is the additional theory of negligent failure to warn the user of a product of the dangers involved in its use. In addition to its finding of negligent design, the lower court based its finding of liability on "the failure to warn." The theories are said to be interrelated in the sense that the majority of jurisdictions have held there is no obligation upon a manufacturer to produce a product free from dangers which are readily apparent, open and obvious.[40] Similarly, the weight of authority, including Mississippi, holds that where a dangerous condition is open and obvious as opposed to latent or hidden—there is no duty upon the manufacturer to warn of such danger.[41]

■ The actual danger attributed to the model 4332 meat grinder arose from the possibility that a user's hands might become caught in the worm mechanism as it was turning since the opening in which the meat was inserted was large enough to permit a hand to enter. Both the district court and Mrs. Ward predicate liability on the part of Hobart, not for failing to warn of this danger, but for failing to warn of the danger of operating the machine without a guard

in view of the fact that neither Mrs. Ward nor her husband were aware that a guard was made for such grinders. It is undisputed that Mrs. Ward was conscious of the consequences of inserting one's hand in the grinder while it was running; she had observed the mutilating effects it produced on a hammer handle.[42] She was totally familiar with the mechanical operation of the machine, having taken it apart on several occasions. It seems superfluous to require a manufacturer to warn a user of the danger of using a machine without a safety device where the user is fully conscious of such danger in the absence of the safety device.[43] Perhaps in today's consumer oriented society such a requirement may eventually be imposed upon manufacturers. But it must be remembered that we are dealing with a product manufactured in 1948. At the time this product was placed on the market it met the standards of the day.

Mrs. Ward argues that the grinder should have had a plate permanently attached which would warn of the danger of using it without the guard or pan. Testimony at the trial, however, indicated that the public demand in 1948 was for grinders without guards so that larger pieces of meat could be inserted. Hobart, in 1948, had no reason to believe

1969); Zahora v. Harnischfeger Corp., 404 F.2d 172, 175 (7th Cir. 1968); Marker v. Universal Oil Products Co., 250 F.2d 603 (10th Cir. 1957); Day v. Barber-Colman Co., 10 Ill.App.2d 494, 135 N.E.2d 231 (1956).

40. See note 36 *supra.*

41. This principle is explicitly stated in the Mississippi case of Harrist v. Spencer-Harris Tool Co., 244 Miss. 84, 140 So.2d 558, 562 (1962): "No duty rests upon a manufacturer or seller to warn a purchaser of a dangerous design which is obvious. If this were not true, a manufacturer could not design and sell a pocket knife, axe, planer or gun." Chief Judge Clayton of the Northern District of Mississippi followed *Harrist* in Hobart v. Sohio Petroleum Co., 255 F.Supp. 972 (N.D.Miss.1966).

The consensus in other jurisdictions is in agreement with the Mississippi rule.

E. g., Tomicich v. Western-Knapp Engineering Co., 423 F.2d 410, 412 (9th Cir. 1970) (applying the rule which the court thought Montana courts would apply); Posey v. Clark Equipment Co., 409 F.2d 560, 563 (7th Cir. 1969) (applying Indiana law); Bowman v. Kaufman, 387 F.2d 582, 590 (2d Cir. 1967) (applying N. Y. law); cases cited Annot., 76 A.L.R. 2d 9, 28 n. 18.

42. See note 38 supra.

43. Where a user of a product is found to have actually known of the danger the general rule is that liability will not be predicated upon a breach of a duty to warn. E. g., Vroman v. Sears, Roebuck & Co., 387 F.2d 732, 735 (6th Cir. 1967); Thibodaux v. McWane Cast Iron Pipe Co., 381 F.2d 491, 495 (5th Cir. 1967); Sawyer v. Pine Oil Sales Co., 155 F.2d 855 (5th Cir. 1946).

that such a plate would have any effect. While Mrs. Ward may have had no knowledge of the safety guard, she was well aware of the danger; neither she nor her husband made any inquiry about a guard, operating instructions, or other safety measures.[44]

The interest in preventing personal injuries must be balanced against the need for viable enterprises. A decision for Mrs. Ward in the present case would be a step toward the imposition of absolute liability upon manufacturers. While it might be said that the trend of recent years tends toward such a doctrine, the Mississippi courts have said or done nothing which would warrant our adding impetus to such a trend in this diversity case.[45] According full consideration to all the facts and circumstances we conclude that the district court committed error in finding Hobart negligent for failing to warn Mrs. Ward of the risk involved in operating the grinder.

In view of our disposition of the issue discussed it is not necessary to consider the other questions presented by Hobart or Mrs. Ward. On the totality of all the evidence presented we are firm in our conclusion that error has been committed.[46]

The judgment of the district court is reversed with directions to enter judgment for the appellant Hobart.

Reversed with directions.

---

44. Mrs. Ward's husband testified at the trial that he had seen feed pans or guards on larger model meat grinders.

45. In a series of recent strict liability cases involving alleged defects in the design of automobiles, the Mississippi Supreme Court has refused to hold manufacturers liable where the alleged defect did not cause or contribute to the cause of the accident, e. g., defective seat belts contributed to injuries, but accident caused by collision. In these cases the court has reasoned that it is *the province of the legislature to establish detailed design requirements, not the courts.* General Motors Corp. v. Howard, 244 So.2d 726 (Miss.1971); Ford Motor Co. v. Simpson,

233 So.2d 797 (Miss.1970); Walton v. Chrysler Motor Corp., 229 So.2d 568 (Miss.1969) (emphasis added). While special problems would obviously attend a court's attempt to establish design standards for various parts of an automobile, another unspoken rationale for the court's result is simply its reluctance to extend the liability of manufacturers. This idea is evidenced to some extent in the court's statement in *Walton, supra* at 572, that a manufacturer is not an "insurer against the possibility of accidental injury arising out of the use of its product."

46. United States v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).