**Eda Mae PAGE, Plaintiff-Appellant,**

v.

**BARKO HYDRAULICS,
Defendant-Appellee.**

**No. 80–3642.**

United States Court of Appeals,
Fifth Circuit.

April 16, 1982.

Frank S. Thackston, Jr., Greenville, Miss., for plaintiff-appellant.

Butler, Snow, O'Mara, Stevens & Cannada, Walter G. Watkins, Jr., Roger C. Landrum, Jackson, Miss., for defendant-appellee.

Before CLARK, Chief Judge, THORN-
BERRY and GARZA, Circuit Judges.

CLARK, Chief Judge:

Rufus Page, an employee of the City of
Greenville, Mississippi, died in the course of
his employment when he was engulfed in
flames while operating a hydraulic knuckle-
boom loader manufactured by Barko Hy-
draulics, Inc. His mother, Eda Mae Page,
administratrix of her son's estate, brought a
wrongful death action in the Circuit Court
of Washington County, Mississippi against
Barko and the City on theories of strict
liability in tort and negligence. Page set-
tled with the City and thereafter Barko
removed the case to the United States Dis-
trict Court claiming diversity jurisdiction.
At the conclusion of the evidence the dis-
trict court directed a verdict for Barko on
the strict liability claim.[1] The negligence
claim was permitted to go to the jury,
which returned a verdict for Barko. Apply-
ing Mississippi law, we affirm the jury's
verdict, but reverse the directed verdict and
remand for a new trial on the issue of strict
liability.

The limb loader, as it is called by the
parties, is a machine designed to be mount-
ed on a truck. It has hydraulically powered
arms located at the end of a boom which
can pick up felled tree limbs and load them
onto the bed of the truck for removal and
disposal. The limb loader in question was
sold to the City by one of Barko's dealers,
Tri-State Equipment Company of Memphis,
Tennessee. City of Greenville employees
originally mounted the limb loader on one
of the city's trucks. After that vehicle was
involved in a minor accident the limb loader
was removed and mounted on a second city
truck. The proof at trial demonstrated that
the method of mounting on both trucks
conformed to Barko's instructions.

The parties stipulated in the pre-trial or-
der that the day prior to the fatal fire,
August 16, 1978, there were two fires on
the limb loader, and that Rufus Page re-
ported these fires to the city maintenance
shop. A city mechanic, Eugene Watson,
went out to where Page was working and
determined that a hose coupling known as
the Aeroquip 90° coupling, or swivel, was
leaking hydraulic fluid. Watson brought
the swivel back to the city shop for repair.
He took it apart and then consulted with
his superior, Oscar Worbington. Together,
they discovered that the leak resulted from
two worn "O" rings in the swivel. Lacking
identical replacement parts, Watson and
Worbington proceeded to insert four small-
er "O" rings into the space provided for the
original two. They then reconnected the
parts of the swivel and used the original
snap ring to lock them back together. Wat-
son reattached the swivel onto the limb
loader, and then watched the machine oper-
ate for several minutes without incident.
Watson testified that he returned that af-
ternoon to where Page was operating the
limb loader and once again found no leak-
ing from the repaired swivel.

---

1. Mississippi has adopted section 402A of the
American Law Institute's Restatement of Torts
(Second) as the appropriate standard of strict
liability for product manufacturers. *State
Stove Manufacturing Co. v. Hodges,* 189 So.2d
113, 118 (Miss.1966), *cert. denied* 386 U.S. 912,
86 S.Ct. 860, 17 L.Ed.2d 784 (1967).
  Section 402A provides:
  Special Liability of Seller of Product for
  Physical Harm to User or Consumer—
  (1) One who sells any product in a defective
  condition unreasonably dangerous to the user
  or consumer or to his property is subject to
  liability for physical harm thereby caused to
  the ultimate user or consumer, or to his prop-
  erty, if

(a) the seller is engaged in the business of
selling such a product, and
(b) it is expected to and does reach the
user or consumer without substantial change
in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies
although
(a) the seller has exercised all possible care
in the preparation and sale of his product,
and
(b) the user or consumer has not bought
the product from or entered into any contrac-
tual relation with the seller.

The fatal fire occurred the next morning approximately thirty minutes after Page began operating the limb loader. The parties stipulated that the Aeroquip swivel separated, allowing hydraulic fluid to spew onto the truck's hot exhaust manifold which caused it to ignite. The manifold was hot because the truck's engine had to be running for the limb loader to operate. Page suffered second and third degree burns over eighty-seven percent of his body. He was hospitalized for eighteen days, during which time he suffered excruciating pain, and then died.

The parties disagree as to what caused the swivel to separate. Did Watson's installation of four incorrect "O" rings in the space where two were designed to fit have anything to do with the swivel's coming apart? Did Watson correctly replace the snap ring holding the swivel together? Was the snap ring as designed by Barko sufficient to hold the swivel under stress? Did the hydraulic oil surging through the swivel cause it to knock repeatedly against the truck frame resulting in separation?

### I. *Strict Liability*

Ultimately, the precise cause of the swivel's separation is immaterial to plaintiff's primary theory of recovery, which pertains to the overall design configuration of the loader. This theory is based on the fact that in Barko's approved mounting of the limb loader on the truck, the operator is positioned directly over a number of hydraulic hoses, couplings and valves. These hoses and couplings are in turn positioned directly over the truck's necessarily hot exhaust manifold. The hoses and couplings, including the Aeroequip 90° swivel, were admitted by Barko to be normal "wear" items not intended to be permanent. Thus, when one of them inevitably failed and leaked, its direct position over the hot, unshielded manifold could result in a fire which would endanger the life of the operator. Page claims that (1) the operator's seat should have been shielded, or (2) a shield should have been placed over the exposed manifold, or (3) the manifold should have been rerouted. She argues

that lacking any such safety features, the limb loader was defectively designed and unreasonably dangerous within the meaning of section 402A. Alternatively, she claims that since Barko knew the swivel would eventually wear out, and admitted that nine out of ten mechanics couldn't properly repair it, the machine was rendered unreasonably dangerous because of Barko's failure to warn would-be repairmen to replace the swivel with a new one instead of attempting to repair it. These same allegations were also framed in terms charging Barko with negligent product design, and negligent failure to warn.

Barko's defense rested primarily on the incorrect repair job done by the City repairmen. Barko argued that the repair constituted a substantial change in the product so as to defeat one of the elements of strict liability. *See Fruehauf Corp. v. Trustees of First United Methodist Church*, 387 So.2d 106, 109 (Miss.1980). The improper repair was asserted to be an unforseeable misuse of the product which placed no duty on Barko. *See Ford Motor Company v. Matthews*, 291 So.2d 169, 174–75 (Miss.1974). Furthermore, Barko offered proof that Watson never consulted the repair manual, so that any warning not to attempt to repair the swivel was irrelevant.

The jury was told that the incorrectly done repair constituted the sole proximate cause of the fire. The defense argued that this machine and many others like it had operated hundreds of hours without a single incident of this type. This not only inferred reasonableness of design, *Ward v. Hobart Manufacturing Co.*, 450 F.2d 1176, 1182 (5th Cir. 1971), but also, since the first fire of this magnitude on the Greenville truck occurred almost immediately after the misrepair, it created an inference that the misrepair alone caused the fatal fire.

Barko asserted for purposes of defeating both the strict liability and negligent design theories that any danger here was open and obvious. *See Ward v. Hobart Manufacturing Co.*, 450 F.2d at 1182. They claimed that in light of the previous day's fires, Page couldn't have been told anything more

than he already knew—that something was wrong with this machine, and that this machine could burn.

The district court directed a verdict on strict liability in part because the plaintiff had failed to offer the requisite proof that there had been no substantial change in the physical parts making up the limb loader since its manufacture. The colloquy between plaintiff's counsel and the court concerning this point reveals that the district court correctly and explicitly distinguished the two different theories of strict liability potentially involved here, one being defective manufacture or design of such component parts as the swivel and snap ring, and the other being a defective overall design configuration as described above.

Insofar as the plaintiff sought to prove that some physical part was defective, we agree with the trial judge that in light of the evidence adduced of changes made to the limb loader, the plaintiff's failure to rebut that proof by showing the allegedly defective physical articles had remained substantially unchanged was fatal to that aspect of their case. *See Fruehauf Corp. v. Trustees of First United Methodist Church*, 387 So.2d at 109.

As the trial court acknowledged, the plaintiff's primary theory was based on a defective overall design configuration and not a defect in a component part. However, the court's directed verdict made no exception for that theory, although the court did recognize that the plaintiff had met her burden of proving that the allegedly defective overall design configuration had remained unchanged. *See Ford Motor Co. v. Matthews*, 291 So.2d at 173. Rather, the court's ruling as to defective overall design was limited to three grounds: 1) that the evidence showed all limb loaders were so designed, 2) that this equipment was not the type of product which would bring section 402A liability into play because the hazard of hydraulic oil leaking out and catching on fire if exposed to a manifold was open and obvious and 3) that use of this equipment did not pose the type of inherently dangerous situation of which

a consumer like the City of Greenville would be unaware.

The first of these grounds, while relevant to negligence, *Ward v. Hobart Manufacturing Co.*, 450 F.2d at 1182, is clearly an incorrect legal standard in strict liability. For purposes of determining whether a product is defective and unreasonably dangerous within the meaning of section 402A, industry custom is inconclusive. An inquiry concerning industry custom obscures the fundamental difference between strict liability and negligence because finding that a product conforms to industry practice necessarily infers the reasonableness of the manufacturer in designing its product. But in strict liability the focus is on the safety of the product itself. *See Early-Gary, Inc. v. Walters*, 294 So.2d 181, 186 (Miss.1974). The question is whether the product meets the reasonable expectations of the ordinary consumer as to its safety, *id.; State Stove Manufacturing Co. v. Hodges*, 189 So.2d 113, 120–21 (Miss. 1966), irrespective of all the care that the manufacturer might have put into making it. *Id.;* W. Prosser, *Handbook of the Law of Torts,* § 103 at 672 (4th ed. 1971). Accordingly, the fact that all machines might be made by a common dangerous design would not preclude a finding that a particular brand of limb loader did not meet the reasonable expectations of the ordinary user as to its safety.

The second enumerated basis for the directed verdict on strict liability, that the danger here was open and obvious, is a finding that, on this record, should have been left for the jury. That hydraulic fluid will ignite is like the meatgrinder which injured the hand inserted into it in *Ward v. Hobart Manufacturing Co.*, 450 F.2d at 1186–87. That sort of danger is open and obvious. But here the danger consisted of an unusual chain of events: hydraulic fluid spewed out of a closed system that should have contained it, it fell upon an exhaust manifold which happened to be directly below, and the resulting inferno engulfed an operator who was located well above the entire apparatus. We cannot say that rea-

sonable minds could not differ as to whether such a danger was open and obvious.

The third ground for the directed verdict was that this type of equipment did not pose a danger to which a consumer like the City of Greenville would be unaware. However, the court incorrectly focused on the City, rather than Rufus Page. Because strict liability creates a duty to any foreseeable user of the product, obviousness of danger must likewise be measured in reference to all foreseeable users. *See Gordon v. Niagara Machine & Tool Works*, 574 F.2d 1182, 1189 (5th Cir. 1978). Reasonable minds could differ that the danger here was obvious to Rufus Page.

The evidence showed that Barko approved the design configuration of the limb loader, and that the allegedly defective configuration remained unchanged through the date of the accident. *See Ford Motor Co. v. Matthews*, 291 So.2d at 173. Because the evidence was of such quality and weight that reasonable jurors could differ, the court erred in directing a verdict that the limb loader was not defective and unreasonably dangerous. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969).

On remand the defendants may still seek to disprove that the limb loader was defective and may seek to prove that the City's repair was the sole proximate cause of the fire. But based on this record, these issues are for the jury to resolve. "Whether a product is reasonably safe or not is a flexible standard responsive to the facts of each case. It is a question of fact whether the particular article involved was reasonably safe when it left the control of the manufacturer." *State Stove Manufacturing Co. v. Hodges*, 189 So.2d at 121.

## II. *Negligence*

■ As to negligence, the jury's verdict must be permitted to stand because it has sufficient evidence to support it. *Mary S. Krech Trust v. Lake Apartments*, 642 F.2d 98, 103 (5th Cir. 1981). The jury could permissibly have found that Barko was not negligent because it exercised a reasonable standard of care in designing this product which conformed to general industry stan-

dards. *See Ward v. Hobart Manufacturing Co.*, 450 F.2d at 1182. The jury could have found the city's repair constituted an unforeseeable misuse of the product, relieving Barko of any liability. *Ford Motor Company v. Matthews*, 291 So.2d at 174. Finally, it might have found the repair to be a superseding and sole proximate cause. *Id.* at 176.

The plaintiff advances three evidentiary points on appeal which assertedly mandate reversal of the jury's verdict. The first point pertains to the exclusion of expert testimony by Dr. Courtney Busch, whose ballpeen hammer testing procedures assertedly proved that the swivel separated as a result of knocking against the truck frame. The court excluded Dr. Busch's testimony because he was unable to quantify the hammer force applied in his attempt to simulate the knocking of the swivel against the truck frame.

■ A trial court has wide discretion to admit or exclude expert testimony, and only if we determine that a ruling is manifestly erroneous may we find that discretion abused. *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 535 (5th Cir. 1974). Dr. Busch persuasively asserted that it was unnecessary to quantify the force he applied in order for his ultimate conclusions to be relevant. However, we find no abuse by the district court in excluding this testimony. Because he did not duplicate the actual mechanics involved, permitting a jury to consider his experiments, and counsel's inevitable criticism of the methods utilized, could have been more confusing than helpful.

■ The second evidentiary point relates to the exclusion of rebuttal testimony by Oscar Worbington, Watson's superior, to the effect that he had read the Barko manual, and found no warnings therein concerning the danger of attempting to repair, rather than replace, the Aeroquip swivel. The plaintiff offered this testimony to rebut the defendant's proof that Watson had not consulted the repair manual, thereby making immaterial Barko's failure to warn.

The district judge acknowledged the relevance and importance of this testimony. However, he declined to permit plaintiff's lawyers to remedy what he perceived to be a defect in their case-in-chief through rebuttal testimony. The conduct of a fair trial is a matter within the trial judge's discretion. *Excel Handbag Co. v. Edison Brothers Stores, Inc.*, 630 F.2d 379, 388 (5th Cir. 1980). The judge had forewarned all counsel that he intended to be strict in his rulings on rebuttal testimony. We find no abuse of discretion here.

The final evidentiary ruling presents a more difficult question. The court admitted, over plaintiff's strenuous objection, Eda Mae Page's deposition testimony recalling a conversation between herself and Rufus Page several days after the accident. This conversation took place while Rufus was in the hospital. Mrs. Page testified in this deposition that Rufus said to her: "Mamma, I'm ruint, ain't I? I'm ruint for life. I'm burnt. This didn't have to happen. [I] asked them to put new lines on the truck."

Plaintiff's counsel made a hearsay objection. In response the defendant was unable to establish any other basis for admission of this statement other than the residual, or "catch all", exception to the hearsay rule provided by the Federal Rules of Evidence 803(24).[2] After hearing extensive arguments from counsel on this point, the district court concluded that all the elements of the rule were present and admitted the testimony.

The most troubling aspect of admitting this testimony is subpart (B) of the Rule—that the offered statement is more probative on the point for which it is offered than other evidence which the proponent can procure. Rufus Page was suddenly engulfed in flames and thereafter died. He could not see what caused the fire which severely burned him. He knew only that in response to the previous day's fires, the City had repaired the Aeroquip swivel. He did not see Watson repair the swivel. His statement to his mother, which was intended to convince the jury that the city's failure to repair caused the accident, was speculation which had little probative value. *Compare Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir. 1979). It was most surely cast in an emotional and potentially prejudicial setting.

■ A trial court's rulings on relevancy and materiality of evidence will not be disturbed absent a clear showing of abuse of discretion. *Richardson v. McClung*, 559 F.2d 395, 396 (5th Cir. 1977). So too, a district court has considerable discretion in applying the residual exception to the hearsay rule which a court of appeals will not disturb absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors. *Huff v. White Motor Corp.*, 609 F.2d at 291. The defendants had other witnesses whose testimony was far more probative, and direct, as to the cause of the fire than the statement attributed to Rufus Page. *Compare Huff v. White Motor Corp.*, 609 F.2d at 295. Unquestionably, their testimony was far less prejudicial. In our opinion it would have been a more precise application of Rule 803(24), and would have best served the interests of justice, Rule 803(24)(C), to exclude the offered statement. However, our standard of review requires more than a judgment that we would have ruled differently and so we decline to hold that the statement's admission was reversible error.

2. Rule 803(24) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(24) Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence ...

Rule 804(5), which relates to a situation such as is present here where the declarant is unavailable, is identical to Rule 803(24).

Because these evidentiary issues will probably recur on retrial, though not in precisely the same context, we emphasize that our rulings today are not precedent for that time. The district court will be free to reconsider these issues anew.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.